The Honorable Lauren King

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARK HOFFMAN, on behalf of himself and all others similarly situated,

Plaintiffs,

v.

4 PILLAR CONSULTING, LLC, aka 4 PILLAR CONSULTING HOLDINGS, LLC, aka 4 PILLAR CONSULTING SYNDICATION, LLC, and DOES 1-10,

Defendants.

CASE NO. 2:26-cv-03102-LK

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S PUTATIVE CLASS ACTION COMPLAINT**

**NOTED FOR MOTION CALENDAR: NOVEMBER 6, 2026**

**ORAL ARGUMENT REQUESTED**

Action Filed: July 24, 2026
Date Removed: August 31, 2026

## TABLE OF CONTENTS

**Page**


INTRODUCTION ........ 1
RELEVANT ALLEGATIONS ........ 3
APPLICABLE LEGAL STANDARDS ........ 4
ARGUMENT ........ 5
I. The Complaint Is An Improper "Shotgun Pleading" That Violates Rules 8 And 10. ........ 6
II. The Entire Complaint Should Also Be Dismissed Under Rule 12(b)(6) Because Plaintiff Fails To Plausibly Allege A Theory Of Liability Against 4 Pillar. ........ 7
III. The Entire Complaint Should Also Be Dismissed Under Rule 12(b)(6) Because Plaintiff Fails To Plead Sufficient Facts Supporting Essential Elements Of All His Claims. ........ 12
A. Plaintiff Does Not Plausibly Allege Receipt of a "Telephone Solicitation" or "Telemarketing" Call As Defined by the TCPA (Counts 1, 2, and 3). ........ 12
B. Plaintiff Does Not Plausibly Allege That He Qualifies as a "Residential" Subscriber Within the Meaning of the TCPA (Counts 1, 2, and 3). ........ 13
C. Plaintiff Does Not Adequately Allege That He Registered Each of the Subject Cell Phone Numbers on the National DNC Registry (Count 1). ........ 14
D. Plaintiff Does Not Plausibly Allege That 4 Pillar Lacked Internal DNC Procedures Before Initiating the Subject Communications (Counts 2 and 3). ........ 15
E. Plaintiff's State Law Claims Are Similarly Ill-Pled (Counts 5, 6, 7, and 8). ........ 16
IV. Plaintiff's Complaint Is Also Riddled With Legal Defects That Mandate Dismissal. ........ 18
CONCLUSION ........ 20

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Aaronson v. CHW Grp., Inc.*,
2019 WL 8953349 (E.D. Va. Apr. 15, 2019) ........ 9

*Abante Rooter & Plumbing v. Farmers Grp., Inc.*,
2018 WL 288055 (N.D. Cal. Jan. 4, 2018) ........ 7, 8

*Alexander v. Sandoval*,
121 S. Ct. 1511 (2001) ........ 18

*Ambach v. French*,
167 Wn.2d 167 (2009) ........ 18

*Andersen v. Nexa Mortg., LLC*,
2024 WL 3762098 (C.D. Cal. Aug. 12, 2024) ........ 13

*Armstrong v. Investor's Bus. Daily, Inc.*,
2018 WL 6787049 (C.D. Cal. Dec. 21, 2018) ........ 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ passim

*Aussieker v. TSHB, LLC*,
2024 WL 379394 (E.D. Cal. Feb. 1, 2024), *report and rec. adopted*, 2024 WL 870449 (Feb. 29, 2024) ........ 19

*Bailey v. Domino's Pizza, LLC*,
867 F. Supp. 2d 835 (E.D. La. 2012) ........ 16

*Bank v. Alleviate Tax, LLC*,
2024 WL 1332635 (E.D.N.Y. Mar. 28, 2024) ........ 10

*Bank v. Consumer Tax Advoc., LLC*,
2025 WL 1640500 (E.D.N.Y. Feb. 5, 2025) ........ 9

*Barker v. Sunrun Inc.*,
2019 WL 1983291 (D.N.M. Apr. 29, 2019) ........ 12

*Barnett v. Bank of Am., N.A.*,
2021 WL 2187950 (W.D.N.C. May 28, 2021) ........ 16

*Barr v. Macys.com, LLC*,
2023 WL 6393480 (S.D.N.Y. Sept. 29, 2023) ........ 15

*Barton v. Bright Solar Mktg. LLC*,
2025 WL 2880136 (W.D. Wash. Oct. 9, 2025) ........ 6, 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ passim

*Bell v. Hawx Servs., LLC*,
2025 WL 2533371 (E.D. Cal. Sept. 3, 2025) ........ 13

*Bennett v. Celtic Ins. Co.*,
2022 WL 865837 (N.D. Ill. Mar. 23, 2022)........ 9

*Cal. Crane Sch., Inc. v. Google LLC*,
2025 WL 2541913 (9th Cir. Sept. 4, 2025) ........ 5

*Card v. R.J. Reynolds Tobacco Holdings, Inc.*,
2026 WL 2673068 (M.D.N.C. Sept. 3, 2026) ........ 20

*Charman v. Desert Lake Grp., LLC*,
2024 WL 2000640 (S.D. Cal. May 6, 2024)........ 6, 7

*Charvat v. DFS Servs. LLC*,
781 F. Supp. 2d 588 (S.D. Ohio 2011)........ 15, 19

*Charvat v. GVN Michigan, Inc.*,
561 F.3d 623 (6th Cir. 2009) ........ 15, 19

*Colony Cove Properties, LLC v. City of Carson*,
640 F.3d 948 (9th Cir. 2011) ........ 5

*Conrad v. Hart Consumer Products*,
2026 WL 2741623 (N.D. Ala. Sept. 16, 2026)........ 20

*Cosenza v. Nice North America, LLC*,
2026 WL 2248829 (C.D. Ill. Aug. 4, 2026)........ 9

*Cunningham v. McDonald*,
2018 WL 6737418 (M.D. Tenn. Nov. 5, 2018), *report and rec. adopted,* 2018 WL 6198417 (Nov. 28, 2018)........ 13

*Davis v. CVS Pharm., Inc.*,
797 F. Supp. 3d 1270 (N.D. Fla. 2025)........ 20

*Dobronski v. Juliasangel Mktg., LLC*,
2025 WL 2659265 (E.D. Mich. Sept. 17, 2025) ........ 18

*Dobronski v. Russo*,
2024 WL 4363118 (E.D. Mich. Sept. 30, 2024) ........ 9

*Dolemba v. Kelly Servs., Inc.*,
2017 WL 429572 (N.D. Ill. Jan. 31, 2017)........ 16

*EEOC v. Waffle House, Inc.*,
534 U.S. 279 (2002)........ 19

*Eggleston v. Reward Zone USA LLC*,
2022 WL 886094 (C.D. Cal. Jan. 28, 2022)........ 13

*El-Sayed v. Naturopathica Holistic Health, Inc.*,
2025 WL 2997759 (M.D. Fla. Oct. 24, 2025)........ 20

*Ewing v. 8 Figure Dream Lifestyle, LLC*,
2019 WL 1429589 (S.D. Cal. Mar. 29, 2019) ........ 6

*Ewing v. Encor Solar, LLC*,
2019 WL 277386 (S.D. Cal. Jan. 22, 2019) ..... 6

*Ewing v. GoNow Travel Club, LLC*,
2019 WL 3253058 (S.D. Cal. July 19, 2019) ..... 6

*Fabricant v. Elavon, Inc.*,
2020 WL 11884505 (C.D. Cal. Aug. 25, 2020) ..... 11

*Frank v. Cannabis & Glass, LLC*,
2019 WL 4855378 (E.D. Wash. Oct. 1, 2019) ..... 8, 10

*Gillam v. Reliance First Capital, LLC*,
2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023) ..... 13, 14

*Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*,
86 Wn. App. 732 (1997) ..... 18

*Gordon v. Pete's Auto Serv. of Denbigh, Inc.*,
637 F.3d 454 (4th Cir. 2011) ..... 19

*Greene v. Select Funding, LLC*,
2021 WL 4926495 (C.D. Cal. Feb. 5, 2021) ..... 13

*Gulden v. Consol. World Travel Inc.*,
2017 WL 3841491 (D. Ariz. Feb. 15, 2017) ..... 7, 13

*Hamilton v. El Moussa*,
2020 WL 2614625 (C.D. Cal. Feb. 10, 2020) ..... 6

*Hamilton v. Voxeo Corp.*,
2009 WL 1868542 (S.D. Ohio June 25, 2009) ..... 15

*Hand v. Beach Ent. KC, LLC*,
456 F. Supp. 3d 1099 (W.D. Mo. 2020) ..... 19

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
105 Wn.2d 778 (1986) ..... 17

*Hernandez v. Select Portfolio, Inc.*,
2015 WL 3914741 (C.D. Cal. June 25, 2015) ..... 11

*Hicks v. Alarm.com*,
2020 WL 9261758 (E.D. Va. Aug. 6, 2020) ..... 8, 13

*Horton v. Molina Healthcare of Texas, Inc.*,
2026 WL 490216 (N.D. Tex. Feb. 6, 2026), *report and rec. adopted*, 2026 WL 488753 (Feb. 20, 2026) ..... 12, 13

*Hulett v. EYEBUYBIRECT*,
2025 WL 1677071 (N.D.N.Y. June 13, 2025) ..... 15

*In re Dish Network, LLC*,
28 FCC Rcd. 6574 (2013) ..... 8, 9

*In re Rules & Regs. Implementing the TCPA*,
30 FCC Rcd. 7961 (2015) ..... 5

*Irvin v. Sonic Indust. Serv., LLC*,
2026 WL 1098403 (N.D. Ga. Apr. 20, 2026) ........ 20

*James v. Smarter Contact, Inc.*,
2026 WL 879244 (M.D. Fla. Mar. 31, 2026) ........ 20

*Jones v. Pollard*,
2022 WL 706926 (S.D. Cal. Mar. 9, 2022) ........ 5, 11

*Kemen v. Cincinnati Bell Tel. Co., Inc.*,
2023 WL 361136 (S.D. Ohio Jan. 23, 2023) ........ 13

*King v. Amazon.com Servs. LLC*,
2026 WL 628261 (W.D. Wash. Mar. 6, 2026) ........ 17

*Laccinole v. Appriss, Inc.*,
453 F. Supp. 3d 499 (D.R.I. 2020) ........ 16

*Laccinole v. Rocket Mortg., LLC*,
609 F. Supp. 3d 68 (D.R.I. 2022) ........ 16

*Lowrey v. Twilio, Inc.*,
2026 WL 2958730 (W.D. Va., Oct. 1, 2026) ........ 14, 20

*Maldonado-Rodriguez v. Citibank, N.A.*,
2013 WL 350814 (N.D. Ind. Jan. 28, 2013) ........ 11

*Masters v. Wells Fargo Bank S. Cent.*,
2013 WL 3713492 (W.D. Tex. July 11, 2013) ........ 19

*Matthews v. Senior Life Ins. Co.*,
2025 WL 1181789 (E.D. Va. Apr. 22, 2025) ........ 10

*Meeks v. Buffalo Wild Wings, Inc.*,
2018 WL 1524067 (N.D. Cal. Mar. 28, 2018) ........ 8, 11

*Metzler v. Pure Energy USA LLC*,
2023 WL 1779631 (S.D.N.Y. Feb. 6, 2023) ........ 9

*Meyer v. Capital Alliance Group*,
2017 WL 5138316 (S.D. Cal. Nov. 6, 2017) ........ 18

*Montes v. SPARC Grp. LLC*,
6 Wn.3d 321 (2026) ........ 17, 18

*Morgan v. U.S. Xpress, Inc.*,
2018 WL 3580775 (W.D. Va. July 25, 2018) ........ 14

*Murphy v. DCI Biologicals Orlando, LLC*,
2013 WL 6865772 (M.D. Fla. Dec. 31, 2013), *aff'd* 797 F.3d 1302 (11th Cir. 2015) ........ 13

*Naiman v. Freedom Forever, LLC*,
2019 WL 1790471 (N.D. Cal. Apr. 24, 2019) ........ 11

*Nelums v. Mandu Wellness, LLC*,
2023 WL 5607594 (D.N.M. Aug. 30, 2023) ........ 8

*Pascal v. Agentra, LLC*,
2019 WL 5212961 (N.D. Cal. Oct. 16, 2019) .......... 7, 8

*Peoples v. United Servs. Auto. Ass'n*,
194 Wn.2d 771 (2019) .......... 18

*Radvansky v. 1-800-FLOWERS.COM, Inc.*,
2026 WL 456919 (N.D. Ga. Feb. 17, 2026) .......... 20

*Radvansky v. 1st Class Medical*,
2026 WL 2858562 (D. Colo. Sept. 23, 2026) .......... 20

*Richards v. Fashion Nova, LLC*,
2026 WL 847568 (S.D. Ind. Mar. 26, 2026) .......... 20

*Richards v. Shein Distrib. Corp.*,
2026 WL 847584 (S.D. Ind. Mar. 26, 2026) .......... 20

*Rogers v. Assurance IQ, LLC*,
2023 WL 2646468 (W.D. Wash. Mar. 27, 2023) .......... passim

*Rogers v. Interstate Nat'l Dealer Servs. Inc.*,
2020 WL 4582689 (N.D. Ohio Aug. 10, 2020) .......... 10

*Rogers v. Postmates Inc.*,
2020 WL 3869191 (N.D. Cal. July 9, 2020) .......... 7

*Rush v. Selectquote Ins. Serv., Inc.*,
2026 WL 2495598 (W.D. Mo. July 30, 2026) .......... 20

*Sacco v. Mouseflow, Inc.*,
2022 WL 4663361 (E.D. Cal. Sept. 30, 2022) .......... 5, 11

*Scruggs v. CHW Grp., Inc.*,
2020 WL 9348208 (E.D. Va. Nov. 12, 2020) .......... 10

*Sheski v. Shopify (USA) Inc.*,
2020 WL 2474421 (N.D. Cal. May 13, 2020) .......... 8

*Simmons v. Charter Commc'ns, Inc.*,
222 F. Supp. 3d 121 (D. Conn. 2016), *aff'd*, 686 F. App'x 48 (2d Cir. 2017) .......... 15

*Smith v. Direct Building Supplies, LLC*,
2021 WL 4623275 (E.D. Pa. Oct. 7, 2021) .......... 9

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) .......... 5

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .......... 5

*Stark & Ewing v. Stall*,
2019 WL 3718878 (S.D. Cal. Aug. 7, 2019) .......... 6

*Steidinger v. Blackstone Med. Servs.*,
182 F.4th 532 (7th Cir. 2026) .......... 20

*Stockdale v. Skymount Prop. Grp., LLC*,
2026 WL 591842 (N.D. Ohio Mar. 3, 2026) ........ 20

*Sundstrom v. Ocean Reef Media LLC*,
2026 WL 1361646 (W.D. Wash. May 15, 2026) ........ 7, 11, 17

*Thomas v. Elite Legal Prac. PC*,
2026 WL 1048217 (C.D. Cal. Mar. 23, 2026) ........ 19

*Thomas v. Taco Bell Corp.*,
582 F. App'x 678 (9th Cir. 2014) ........ 7, 11

*Tom v. Delancey Street Group, LLC*,
2026 WL 2255107 (E.D.N.Y. Aug. 5, 2026) ........ 18

*Usanovic v. Americana, L.L.C.*,
775 F. Supp. 3d 1133 (D. Nev. 2025) ........ 11

*Warnick v. Dish Network LLC*,
301 F.R.D. 551 (D. Colo. 2014) ........ 12

*Watt v. HAL Antillen N.V.*,
2024 WL 4436966 (W.D. Wash. Oct. 7, 2024) ........ 7

*Weingrad v. Top Healthcare Options Ins. Agency Co.*,
2024 WL 4228149 (E.D. Pa. Sept. 17, 2024) ........ 12, 13

*Wick v. Twilio Inc.*,
2017 WL 2964855 (W.D. Wash. July 12, 2017) ........ 8, 10

*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012) ........ 5

*Wilson v. MEDVIDI Inc.*,
2025 WL 2856295 (N.D. Cal. Oct. 7, 2025) ........ 8

*Woodard v. Health Ins. All.*,
2024 WL 942629 (N.D. Ill. Mar. 5, 2024) ........ 10

**STATUTES**

47 U.S.C. §§ 227, *et seq.* ........ passim

47 U.S.C. § 227(b) ........ 20

47 U.S.C. § 227(c) ........ passim

47 U.S.C. § 227(d) ........ 18

RCW 19.86 ........ 17

RCW 19.190.060 ........ 17

RCW 80.36.390 ........ 16, 17, 18

**OTHER AUTHORITIES**

47 C.F.R. § 64.1200(c)(2) ........ 2, 3, 13, 15

47 C.F.R. § 64.1200(d) .......... passim
47 C.F.R. § 64.1200(f)(13) .......... 12
47 C.F.R. § 64.1200(f)(15) .......... 12
47 C.F.R. § 64.1601(e) .......... 3, 18

**RULES**

Fed. R. Civ. P. 8 .......... 1, 6, 11
Fed. R. Civ. P. 10 .......... 1, 6
Fed. R. Civ. P. 12(b)(6) .......... passim
Fed. R. Civ. P. 12(f) .......... 19

# INTRODUCTION

While it is long on conclusions and legal citations, Plaintiff's nine-count putative class action Complaint (*see* Dkt. 1-1) is woefully short on actual plausible ***facts*** meeting the bedrock *Iqbal*/*Twombly* federal pleading standard. In it, Plaintiff Mark Hoffman ("Plaintiff") alleges, in a wholly conclusory and inconsistent fashion, that either 4 Pillar Consulting LLC ("4 Pillar") and/or unidentified "Doe" defendants—parties which the Complaint improperly conflates and refers to collectively throughout as "Defendants"—violated certain "Do Not Call" ("DNC") provisions of the federal Telephone Consumer Protection Act (*i.e.*, 47 U.S.C. § 227, *et seq*., the "TCPA") and various Washington analog statutes. These claims rest squarely on ill-described phone calls and text messages that Plaintiff concludes were initiated either by 4 Pillar and/or by countless "unknown" third party "agents" to three different supposedly "residential" cell phone numbers he purportedly owns, without his consent. *See, e.g.,* Dkt. 1-1, ¶¶ 14, 15, 17, 25, 30. And based on these poorly-pled allegations, Plaintiff seeks to represent six overlapping and redundant putative classes. *Id*., ¶ 37. As demonstrated herein, however, Plaintiff's Complaint fails to properly plead a plausible claim for relief under federal pleading standards, and thus it is ripe for dismissal in its entirety, on at least the following grounds:

**First**, as a threshold matter, the Complaint fails to comply with Fed. R. Civ. P. 8 and 10, as it lumps together, conflates, and fails to differentiate between the parties, the non-parties, the facts, and the claims alleged in an impermissible "shotgun" fashion. Courts in the Ninth Circuit, including in this District, have consistently dismissed such facially-defective pleadings on this basis alone. This Court should rule similarly here and likewise dismiss Plaintiff's entire Complaint for this reason.

**Second**, the entire Complaint should also be dismissed under Fed. R. Civ. P. 12(b)(6) because Plaintiff fails to state any plausible claim for relief against 4 Pillar or to plead actual facts supporting such a claim, in accordance with federal pleading standards. For example, it is well-settled nationally that ***all*** TCPA plaintiffs must first adequately plead a theory of liability against the defendant (*i.e.*, direct or vicarious liability), or they face a complete dismissal of ***any*** TCPA claim under Rule 12(b)(6). Applying this steadfast rule requires Plaintiff here to plausibly allege, with sufficient non-conclusory factual support, that 4 Pillar: (i) itself, and not a third party, "physically" placed or sent each of the

subject communications directly to him (*i.e.,* direct TCPA liability), or (ii) had a common law agency relationship with a third party who did physically place or send the subject communications (*i.e.,* vicarious TCPA liability). At the same time, it is equally well-established that merely taking an equivocating "either/or" pleading approach and concluding that the "defendant and/or its agents" placed or sent the subject communications is insufficient to plausibly allege any theory of TCPA liability, without more. As that is all Plaintiff has done here, and since his state law claims suffer from the same fatal defect, his entire Complaint is doomed to dismissal under Rule 12(b)(6).

**Third**, Plaintiff also failed to plead sufficient facts supporting other essential elements of his various asserted claims, as required under Rule 12(b)(6), which also mandates a complete dismissal of his Complaint. For instance, for his claims in Counts 1 through 3, Plaintiff invokes the TCPA's implementing DNC regulations: 47 C.F.R. § 64.1200(c)(2) and 47 C.F.R. § 64.1200(d). Count 1 invokes the former regulation, which *inter alia* restricts certain "telephone calls" (specifically "telephone solicitations" or "telemarketing" calls) made to "residential" phone numbers properly registered on the National DNC Registry. Counts 2 and 3 are duplicative and together invoke the latter regulation, which reflect the TCPA's "internal" DNC procedural requirements. In this regard, Plaintiff's Complaint omits sufficient non-conclusory facts supporting a plausible inference *inter alia* that (i) each of the subject communications qualifies as a "telephone solicitation" or "telemarketing" call as defined by the TCPA's regulations or he qualifies as a "residential telephone subscriber" under the TCPA, either of which warrants dismissal of Counts 1 through 3; (ii) he himself registered all of the three subject phone numbers that he claims were called on the National DNC Registry, which further warrants dismissal of Count 1; or (iii) 4 Pillar lacked internal DNC procedures prior to the transmission of the alleged communications, which is the only possible legal basis for a violation of the internal regulations, and which further warrants dismissal of Counts 2 and 3. As the authorities cited herein show, federal courts routinely dismiss such ill-pled TCPA claims on these grounds; and Plaintiff's state law claims in Count 5 through 8 have similar elements and thus suffer from the same (and other) deficiencies. Thus, Plaintiff's entire Complaint fails for these additional reasons. And again, merely regurgitating the statutory text, as Plaintiff did here, will not suffice to avoid a dismissal.

**Fourth**, Plaintiff's Complaint also suffers from several other fatal legal defects. For example, Plaintiff invokes the TCPA's Caller ID regulations found in 47 C.F.R. § 64.1601(e) for his claim Count 4, which a majority of federal courts have held do not afford consumers a private cause of action under the TCPA. Consequently, Count 4 must be dismissed on this additional basis.

Further, courts have recognized that, as a matter of law, TCPA plaintiffs cannot recover: (i) under the same TCPA DNC regulations (meaning Plaintiff can only recover under § 64.1200(c)(2) for Count 1 or under § 64.1200(d) for Counts 2 and 3); (ii) under the same internal DNC regulation (meaning Plaintiff could only recover under Count 2 or Count 3, not both); or (iii) under the TCPA and state equivalent statutes for the same alleged violations, which would amount to an impermissible double recovery. As such, Counts 2 through 9 fail and should be dismissed for these additional reasons.

Lastly, the private cause of action afforded under the TCPA for purported violations of the TCPA's implementing DNC regulations invoked for Counts 1 through 3 is found in 47 U.S.C. § 227(c)(5)—a provision which, on its face, applies only to "telephone calls" (*i.e.,* voice calls) and not to all forms of communication to or from a telephone, like text messages, as myriad courts have correctly held when analyzing and applying the plain language of the statutory text. Therefore, none of the text messages of which Plaintiff complains here can legally support his TCPA DNC claims.

## RELEVANT ALLEGATIONS

Plaintiff's Complaint vaguely alleges (or, rather, concludes) *inter alia* that "Defendant 4 Pillar and its unknown agents"—which Plaintiff indicates from the outset "will hereinafter be referred to" collectively as just "Defendants"— "engaged in telemarketing and telephone solicitation activities in Washington State, including the [*sic*] placing phone calls and sending text messages to the Plaintiff to sell products and services" without his consent. Dkt. 1-1, ¶¶ 14, 15, 17, 25. Plaintiff uses singular terminology and he avers: (i) he "is and was the subscriber and regular user of the Washington State area code phone number that received the calls" at issue; (ii) it is assigned to "a cell phone that the Plaintiff uses as a residential phone line"; and (ii) he registered "his Washington State area code cell phone number" on the National Registry "more than 30 days prior to the phone calls in the table below." *Id*. ¶¶ 21, 22, 24. But his "table" refers to ***three different*** phone numbers. *See id*. ¶ 30.

Also as to his "table," Plaintiff characterizes it as "a non-exhaustive list of phone calls and text messages the Plaintiff received in 2025 and 2026, from the Defendants, each of them attempting to sell 4 Pillar's funding services." *Id*. Yet, Plaintiff's "table" provides little (if any) factual detail about the content of these calls or the identity of the callers (*i.e*., if it was 4 Pillar itself or an "unknown agent"), beyond perhaps (i) his repeated conclusory "descriptions" of "[a] sales call from 4 Pillar" or (ii) an additional conclusory statement that "[e]ach caller initiated the call for the purpose of encouraging the Plaintiff to purchase financial services from 4 Pillar." *Id*. ¶¶ 30, 31. Nor does Plaintiff provide the content of any purported text messages he allegedly received, and just likewise baldly concludes that each text was "[a] sales text from Trenton at 4 Pillar" and was "sent to encourage the Plaintiff to purchase financial services from 4 Pillar." *Id*. ¶¶ 30, 32.

Plaintiff similarly concludes, with no factual support, that "Defendants always transmitted inaccurate caller ID information on each of the solicitation calls they initiated to the Plaintiff." *Id*. ¶ 34. But Plaintiff does not provide any description of what information was actually displayed on his Caller ID (or on which phone) that would support his conclusion that it was "inaccurate." Plaintiff further alleges that he "notified 4 Pillar about the unwanted and illegal phone calls and text messages demanded they stop them." *Id*. ¶ 35. However, his "table" only vaguely concludes that "Mr. Hoffman used a reasonable means to send 4 Pillar a do-not-call request" at some point and that "[t]hey received Mr. Hoffman's request on March 13, 2026." *Id*. ¶ 30. Yet, Plaintiff does not provide any factual detail as to what this request said, to whom it was sent, or what "means" he used—let alone plead any facts supporting his conclusions that the means he used were "reasonable" or that 4 Pillar received it. The only other "stop" request mentioned in the Complaint is where Plaintiff allegedly responded to a text message with "Trenton, stop calling me." *Id*. But Plaintiff does not allege that he received any telephone calls after this supposed exchange.

As shown below, these allegations come nowhere close to meeting federal pleading standards.

## APPLICABLE LEGAL STANDARDS

It is axiomatic that "'[d]ismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal

theory.'" *Cal. Crane Sch., Inc. v. Google LLC*, 2025 WL 2541913, at *1 (9th Cir. Sept. 4, 2025) (quoting *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013)). As to the latter, a "bare assertion" and "conclusory allegation[s]" will not suffice to avoid a dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007). A "formulaic recitation of the elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, under Rule 12(b)(6), this Court must only accept well-pled "factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party." *Colony Cove Properties, LLC v. City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011). However, the Court need not "'accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences'" under this Rule. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 n.4 (9th Cir. 2012) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)); *see also Sacco v. Mouseflow, Inc.,* 2022 WL 4663361, at *2 (E.D. Cal. Sept. 30, 2022) (holding that "the Court need not accept [internally] inconsistent allegations in a complaint as true" under Rule 12(b)(6) either) (citing *Jones v. Pollard,* 2022 WL 706926, at *5 (S.D. Cal. Mar. 9, 2022)).

## ARGUMENT

While the TCPA (along with its state counterparts) represents an important remedial statute designed to protect consumers from harassing telemarketers, its remedial purpose does not afford TCPA plaintiffs special pleading deference. This is for good reason, as even the FCC has noted that the TCPA unwittingly spawned a cottage industry of class action litigation, "has strayed far from its original purpose" as a remedial statute, and has "become the poster child for lawsuit abuse" in this country ever since its enactment in 1991. *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 8073 (2015).[1] It is against this backdrop, therefore, that federal judges have widely recognized that they must dutifully fulfil their critical "gatekeeping" function under the Federal Rules of Civil Procedure in TCPA cases (particularly in putative TCPA class actions like this one) to ensure that claims have sufficient plausible factual support before subjecting defendants to the high cost of

[1] This is not surprising, given the broad financial relief the TCPA affords: up to $500 per violative call, which may be trebled to $1,500 for "willful" or "knowing" violations. *See* 47 U.S.C. § 227(c)(5).

discovery and trial. Consequently, federal district courts across the country (including courts in this Circuit in particular) have not hesitated to dismiss TCPA complaints lacking in such requisite facts at the pleadings stage, while still honoring the statute's intended remedial purpose. Plaintiff's similarly-defective Complaint in this case should suffer the same fate for at least the reasons discussed below.

**I. <u>The Complaint Is An Improper "Shotgun Pleading" That Violates Rules 8 And 10.</u>**

As an initial overarching pleading defect, Plaintiff's entire Complaint should be rejected on its face simply because it violates Rules 8 and 10. Federal pleadings must include "short and plain" statements of the pled claims set forth in "numbered paragraphs, each limited as far as practicable to a single set of circumstances" and, "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence … must be stated in a separate count." Fed. R. Civ. P. 8(a), 10(b). Allegations must be "simple, concise, and direct" and not mere labels, legal conclusions, or formulaic recitations of elements. Fed. R. Civ. P. 8(d)(1); *Twombly*, 550 U.S. at 555-57; *Iqbal*, 556 U.S. at 681.

But complaints blurring the lines between the facts and claims to which they apply or conflating parties and non-parties are commonly called "shotgun pleadings"; and courts in this Circuit have routinely held such facially deficient pleadings (particularly in TCPA cases, where the identity of the alleged caller is a critical aspect of the theory of liability element that must be adequately pled in every case) are properly dismissed on this basis alone. *See, e.g.*, *Barton v. Bright Solar Mktg. LLC*, 2025 WL 2880136, at *2–4 (W.D. Wash. Oct. 9, 2025); *Stark & Ewing v. Stall*, 2019 WL 3718878, at *6 (S.D. Cal. Aug. 7, 2019); *Ewing v. 8 Figure Dream Lifestyle, LLC*, 2019 WL 1429589, at *5 (S.D. Cal. Mar. 29, 2019); *Ewing v. GoNow Travel Club, LLC*, 2019 WL 3253058, at *1–4 (S.D. Cal. July 19, 2019); *Ewing v. Encor Solar, LLC*, 2019 WL 277386, at *6 (S.D. Cal. Jan. 22, 2019). In fact, courts in the Ninth Circuit have recognized that a TCPA plaintiff's failure to properly differentiate between the defendants and their conduct is fatal under Rule 8 and 10 because, among other things, such shotgun-style allegations do not "provide adequate detail to tell which defendant did what alleged wrong." *Charman v. Desert Lake Grp., LLC*, 2024 WL 2000640, at *4 (S.D. Cal. May 6, 2024) (citing *Armstrong v. Investor's Bus. Daily, Inc.*, 2018 WL 6787049, at *10 (C.D. Cal. Dec. 21, 2018) and *Hamilton v. El Moussa*, 2020 WL 2614625, at *2 (C.D. Cal. Feb. 10, 2020)). All this rings true here.

In this case, the Complaint repeatedly lumps together the "Defendants," a term which is expressly defined to include 4 Pillar and countless "unknown agents," without properly identifying or distinguishing between what each party or non-party did to violate the law. *See, e.g.,* Dkt 1-1, ¶¶ 14, 15, 17, 25, 30, 33, 34, 37, 40, 41, 43, 49-53, 55-59, 61, 72, 74, 76, 78, 88-90, 92, 97-102, 105-108, 113-114, 116, 120, 121, 127-129, 131, 137-138. As such, the entire Complaint should be dismissed on this basis alone. *See, e.g., Barton,* 2025 WL 2880136, at *4 ("'A complaint that alleges 'everyone did everything' and prevents defendants from understanding the nature of the claims asserted against each of them cannot survive a motion to dismiss.'") (quoting *Watt v. HAL Antillen N.V.*, 2024 WL 4436966, at *2 (W.D. Wash. Oct. 7, 2024)); *Charman*, 2024 WL 2000640, at *4 (ruling similarly).

## II. The Entire Complaint Should Also Be Dismissed Under Rule 12(b)(6) Because Plaintiff Fails To Plausibly Allege A Theory Of Liability Against 4 Pillar.

The actual caller's "identity is a ***necessary*** element of ***all***" TCPA claims, no matter the provision invoked. *Gulden v. Consol. World Travel Inc*., 2017 WL 3841491, at *3 (D. Ariz. Feb. 15, 2017) (emphasis added). Along these lines, as noted above, it is well-settled that, to successfully plead any TCPA claim and avoid dismissal under Rule 12(b)(6), all plaintiffs must first "identify" the caller by adequately alleging a theory of liability under the TCPA. Here, Plaintiff failed to do so.

More specifically, there are two potential theories of liability under the TCPA that must be adequately pled in all cases—direct liability or vicarious liability. This established rule means the defendant "must either (1) directly make the call, or (2) have [a common law] agency relationship with the person who made the call"—and, of course, the plaintiff must plead sufficient facts, not naked conclusions or equivocations, supporting these allegations to comply with federal pleading standards. *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc*., 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)). *See also Rogers v. Postmates Inc*., 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) (citing *Thomas v. Taco Bell Corp.,* 582 F.App'x 678, 679 (9th Cir. 2014)) (discussing these standards and dismissing); *Sundstrom v. Ocean Reef Media LLC,*. 2026 WL 1361646, at *3-5 (W.D. Wash. May 15, 2026) (same); *Rogers v. Assurance IQ, LLC,* 2023 WL 2646468, at *4-7 (W.D. Wash. Mar. 27, 2023) (discussing key

differences between direct and vicarious liability and the standards for pleading same, and dismissing on these bases where complaint did not include sufficient factual support). Moreover, a plaintiff's failure to plausibly allege either theory warrants dismissal of any TCPA claim in its entirety, regardless of whether the plaintiff has also pled facts supporting other essential elements of that claim. *See Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *9 (D.N.M. Aug. 30, 2023). As shown below, Plaintiff failed to plausibly allege either theory here, and relies solely on naked conclusions.

As to the former theory of liability, federal district courts across the country have uniformly recognized that direct liability under the TCPA applies only to persons or entities that "make" or "initiate" telemarketing calls, which means to literally "***physically place***" a phone call or send a text message ***directly*** to the plaintiff. *Sheski v. Shopify (USA) Inc.,* 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (dismissing on this basis, citing *In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)) (emphasis added).[2] This rule has been firmly adopted by district courts across the Ninth Circuit, including by courts in this District. *See, e.g., Rogers v. Assurance*, *Sheski*, *Pascal*, and *Abante*, *supra* (each dismissing TCPA claims under Rule 12(b)(6) on this basis and/or others presented in this Motion); *Frank v. Cannabis & Glass, LLC*, 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019) (same); *Wick v. Twilio Inc.,* 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017) (same); *Wilson v. MEDVIDI Inc*., 2025 WL 2856295, at *4 (N.D. Cal. Oct. 7, 2025) (dismissing on this basis, holding: "Despite Plaintiff's conclusory allegation that the text messages were sent by Defendant, the complaint provides no factual details plausibly suggesting that Defendant actually sent them. There is no discussion, for example, of any investigation Plaintiff conducted to form the understanding that Defendant operated the separate phone numbers from which these messages were sent.").

[2] While various provisions of the TCPA use the terms "make" or "initiate" somewhat interchangeably, courts evaluating and ultimately dismissing conclusory direct TCPA liability claims like Plaintiff's (including those cited above and below, among many others) have uniformly held that "make" or "initiate" in this context means to "physically" place the subject phone calls or send the subject text messages (when texts are legally sufficient to bring a claim, that is). *See also Meeks v. Buffalo Wild Wings, Inc.,* 2018 WL 1524067, at *3–5 (N.D. Cal. Mar. 28, 2018); *Hicks v. Alarm.com*, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020). This represents a clear majority rule.

Such is also true of federal district courts nationally. *See, e.g., Aaronson v. CHW Grp., Inc.*, 2019 WL 8953349, at *2-3 (E.D. Va. Apr. 15, 2019) ("[A]t the pleadings stage, [a] plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls" and dismissing where plaintiff "failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations d[id] not show plausibly that defendant actually, physically initiated the telephone calls at issue."); *Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6, 2023) (holding TCPA plaintiffs must "allege facts from which the Court can plausibly infer that [d]efendant has direct liability, even if it is also plausible that a third party made the call" to avoid dismissal at the pleading stage); *Smith v. Direct Building Supplies, LLC*, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021) (dismissing on this basis where the plaintiff "provide[d] no details specifying how [he] knew [the defendant] in fact [physically] placed these calls"); *Cosenza v. Nice North America, LLC*, 2026 WL 2248829, at *3, 5 (C.D. Ill. Aug. 4, 2026) (dismissing on direct and vicarious liability grounds, holding that "Plaintiff's either/or theory of liability"—*i.e.*, that "Defendant and/or its agents transmitted unwanted telephone calls to Plaintiff"—"asks the Court to blur the line between" the accepted standards for pleading direct and vicarious TCPA liability theories by "erasing the very distinction between seller and telemarketer" found in the statute); *Bank v. Consumer Tax Advoc., LLC,* 2025 WL 1640500, at *7–8 (E.D.N.Y. Feb. 5, 2025) (dismissing TCPA complaint on this basis where, like here, there was "no direct allegation [pled] that [the moving defendant] was the entity that actually initiated the call" at issue); *Dobronski v. Russo,* 2024 WL 4363118, at *5 (E.D. Mich. Sept. 30, 2024) (a plaintiff "simply alleg[ing] that 'Defendants or Defendants' agent' initiated calls" deemed insufficient to plead any theory of TCPA liability).

Conversely, direct TCPA liability cannot be based on calls by third parties, and "generally does not include persons or entities … that might merely have some [indirect] role, however minor, in the causal chain that results in the making of a telephone call." *In re Dish Network, LLC*, 28 FCC Rcd. at 6583; *see also Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) (dismissing on this basis, holding "a [TCPA] defendant 'generally does not [physically] initiate calls placed by third-party telemarketers,' even if the third party had acted on its behalf"). Similarly, it is

settled that "[m]erely offering a good or service for sale does not mean that a retailer [physically] initiates the marketing calls for that product" for direct TCPA liability purposes, either. *Wick,* 2017 WL 2964855, at *3. *See also Rogers v. Interstate Nat'l Dealer Servs. Inc.*, 2020 WL 4582689, at *3 (N.D. Ohio Aug. 10, 2020) (finding calls "on behalf" of a defendant do not support direct liability).

In accordance with *Iqbal*/*Twombly*, however, "[m]erely alleging that [a defendant] 'made' or 'initiated' [a] call" without further factual enhancement, as Plaintiff did here, "is ***not*** sufficient to allege a [direct] TCPA [liability] claim" under Rule 12(b)(6). *Frank,* 2019 WL 4855378, at *2 (emphasis added). *See also Rogers*, 2023 WL 2646468, at *5 (dismissing on this basis where plaintiff merely parroted the statute and concluded one of the defendants "physically" placed the subject calls without additional supporting facts); *Woodard v. Health Ins. All.*, 2024 WL 942629, at *2-3 (N.D. Ill. Mar. 5, 2024) (dismissing on these grounds and others, holding that all "TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal"). In short, "simply asserting a purported fact [as to a caller's identity] does not make it one, where there are no factual allegations to support the asserted conclusion." *Bank v. Alleviate Tax, LLC*, 2024 WL 1332635, at *5, n.6 (E.D.N.Y. Mar. 28, 2024) (dismissing on this basis). Instead, "[a]s a party to these calls, Plaintiff 'should be able" and indeed is ***required*** "to provide greater detail" to plausibly allege a direct TCPA liability theory under Rule 12(b)(6). *Matthews v. Senior Life Ins. Co.*, 2025 WL 1181789, at *3 (E.D. Va. Apr. 22, 2025) (quoting *Scruggs v. CHW Grp., Inc.*, 2020 WL 9348208, at *6 (E.D. Va. Nov. 12, 2020)) (dismissing).

Applying the foregoing firmly-rooted principles, it is readily apparent Plaintiff failed to plausibly allege a direct TCPA liability theory here. Indeed, as noted in the previous section, Plaintiff has merely adopted an "either/or theory of liability" that countless courts have rejected, as he repeatedly conflates 4 Pillar with countless "unknown agents," just parrots the statutory text, and concludes the subject communications were "placed" or "initiated" by or came "from" the "Defendants"—all without any additional factual enhancement. *See, e.g.,* Dkt 1-1, ¶¶ 14, 15, 17, 25, 30, 33, 34, 37, 40, 41, 43, 49-53, 55-59, 61, 72, 74, 76, 78, 88-90, 92, 97-102, 105-108, 113-114, 116, 120, 121, 127-129, 131, 137-138. Federal courts have found that such conclusory and equivocating

allegations are "woefully insufficient to state a claim of any sort." *Maldonado-Rodriguez v. Citibank, N.A.*, 2013 WL 350814, at *5 (N.D. Ind. Jan. 28, 2013). Such is particularly true when it comes to adequately pleading TCPA liability theories, as the many authorities cited above where courts have dismissed similarly ill-pled complaints all show. *See, e.g., Cosenza, Wilson,* and *Rogers*, *supra*.

Nevertheless, at bottom, such internally inconsistent and directly "[c]ontradictory allegations" like Plaintiff's discussed above "are inherently implausible, and [thus] fail to comply with Rule 8, *Twombly*, and *Iqbal*" and cannot survive dismissal under Rule 12(b)(6). *Hernandez v. Select Portfolio, Inc*., 2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015). And it is black letter law in this Circuit that this Court need not accept the many internally inconsistent allegations in the Complaint as true when ruling on this Motion. *See, e.g., Sacco,* 2022 WL 4663361, at *2 (citing *Jones,* 2022 WL 706926, at *5). This Court should rule similarly and flatly reject these deeply-flawed allegations.

Further consistent with federal pleadings standards, bald conclusions that the subject communications were made purported by "agents"—which is <u>all</u> Plaintiff offers in this case—are insufficient to plausibly allege a vicarious TCPA liability theory. *See, e.g., Sundstrom,* 2026 WL 1361646, at *3-5 (dismissing TCPA complaint by the same counsel representing Plaintiff where it lacked facts supporting a vicarious liability theory); *see also Naiman v. Freedom Forever, LLC*, 2019 WL 1790471, at *4 (N.D. Cal. Apr. 24, 2019); *Fabricant v. Elavon, Inc.*, 2020 WL 11884505, at *4 (C.D. Cal. Aug. 25, 2020); *Meeks*, 2018 WL 1524067, at *5 (each ruling similarly). Moreover, the accepted touchstone of a common law agency relationship in the TCPA context, as is required for vicarious TCPA liability, mandates pleading plausible factual allegations suggesting that the defendant had specific "control" over the "manner and means" of any third party's call campaign, as opposed to control over an agent generally. *See, e.g., Meeks*, 2018 WL 1524067, at *6; *Rogers*, 2023 WL 2646468, at *5-6 (citing *Fabricant*, 2020 WL 11884505, at *4); *Usanovic v. Americana, L.L.C.,* 775 F. Supp. 3d 1133, 1140 (D. Nev. 2025) (citing *Thomas*). But Plaintiff pleads no such facts here. Therefore, the Complaint should also be dismissed on vicarious TCPA liability grounds.

Finally, Plaintiff's failure to properly allege a theory of TCPA liability is also fatal to his related state law claims in Counts 5 through 8, which are based on the same ill-pled operative "factual"

allegations as to the callers' identities. *See, e.g., Horton v. Molina Healthcare of Texas, Inc.,* 2026 WL 490216, at *11 (N.D. Tex. Feb. 6, 2026), *report and rec. adopted*, 2026 WL 488753 (Feb. 20, 2026) ("Although Horton asserts that 'Defendants' are liable under Texas state law because they violated the TCPA [], the undersigned concludes that Horton has failed to plausibly plead a TCPA claim. Therefore, his state law [] claim likewise fails.") (internal citations omitted); *Barker v. Sunrun Inc.*, 2019 WL 1983291, at *4 (D.N.M. Apr. 29, 2019) (dismissing entire complaint under Rule 12(b)(6) where plaintiff did not plausibly allege a viable theory of liability under the TCPA, including analog state law claims). Consequently, the entire Complaint should be dismissed on this basis.

## III. The Entire Complaint Should Also Be Dismissed Under Rule 12(b)(6) Because Plaintiff Fails To Plead Sufficient Facts Supporting Essential Elements Of All His Claims.

Plaintiff's Complaint is also subject to a complete dismissal under Rule 12(b)(6) because Plaintiff fails to plead plausible facts supporting other essential elements of his various claims.

### A. Plaintiff Does Not Plausibly Allege Receipt of a "Telephone Solicitation" or "Telemarketing" Call As Defined by the TCPA (Counts 1, 2, and 3).

Firstly, Section 227(c) of the TCPA, on its face, "relates solely to telemarketing and solicitation calls," as opposed to all supposedly "unwanted" telephone calls. *Warnick v. Dish Network LLC,* 301 F.R.D. 551, 558 n. 3 (D. Colo. 2014) ("Informational [or transactional] calls are not included in the [DNC] type of calls."). Thus, for Count 1 of his Complaint, Plaintiff must plead sufficient facts suggesting his receipt of a "telephone solicitation"—a term defined in the TCPA's DNC regulations as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(15). For Counts 2 and 3, Plaintiff must plausibly allege receipt of a "telemarketing" call, which has a substantially similar definition. *See* 47 C.F.R. § 64.1200(f)(13). To meet federal pleading standards, though, "[c]all recipients must do more than" just baldly conclude that "the calls in question were telephone solicitations" to state claims. *Weingrad v. Top Healthcare Options Ins. Agency Co.,* 2024 WL 4228149, at *4 (E.D. Pa. Sept. 17, 2024). Thus, "[w]hile Plaintiff is not required to provide a line-by-line transcript of the telephone calls in question, he is still required to provide more than a conclusory statement that Defendant attempted to solicit" him, to adequately plead this key element. *Bell v. Hawx*

*Servs., LLC,* 2025 WL 2533371, at *4 (E.D. Cal. Sept. 3, 2025). Federal courts applying these firmly rooted principles have, therefore, consistently dismissed DNC claims at the pleadings stage where the plaintiff merely parrots the statute and relies on conclusory labels like "advertisement" or "solicitation" but omits additional requisite factual support. *See, e.g., Eggleston v. Reward Zone USA LLC,* 2022 WL 886094, at *7 (C.D. Cal. Jan. 28, 2022); *Bell*, 2025 WL 2533371, at *3–4 (citing, *inter alia*, *Gulden,* 2017 WL 3841491, at *3, *Andersen v. Nexa Mortg., LLC*, 2024 WL 3762098, at *2 (C.D. Cal. Aug. 12, 2024), and *Greene v. Select Funding, LLC,* 2021 WL 4926495, at *5 (C.D. Cal. Feb. 5, 2021)); *Gillam v. Reliance First Capital, LLC,* 2023 WL 2163775, at *3-4 (E.D.N.Y. Feb. 22, 2023); *Weingrad*, 2024 WL 4228149, at *4. This Court should rule similarly.

Here, Plaintiff pleads no facts about the content of the subject communications, from which this Court could infer that they each meet the statutory definitions above. *See, e.g.,* Dkt. 1-1, ¶¶ 31-32 (concluding the subject communications were sent for "the purpose" of encouraging him "Plaintiff to purchase financial services from 4 Pillar"). Myriad courts have found that such naked allegations are insufficient to plead this key element. *See*, *e.g.*, *Eggleston*, *Andersen*, and *Bell*, *supra*; *Horton,* 2026 WL 490216, at *9 (dismissing DNC claim, where "[t]here [was] no allegation that these calls requested [plaintiff] to purchase anything at all"); *Murphy v. DCI Biologicals Orlando, LLC,* 2013 WL 6865772, at *10 (M.D. Fla. Dec. 31, 2013), *aff'd* 797 F.3d 1302 (11th Cir. 2015) (ruling similarly).

**B. Plaintiff Does Not Plausibly Allege That He Qualifies as a "Residential" Subscriber Within the Meaning of the TCPA (Counts 1, 2, and 3).**

Further, Section 227(c) of the TCPA also does not apply to all phones numbers (like business numbers for example); instead, it can only be invoked by a "residential telephone subscriber." 47 C.F.R. §§ 64.1200(c)(2) & (d). Courts in this Circuit, including in this District, and elsewhere have therefore recognized that plaintiffs bringing DNC claims must allege sufficient non-conclusory facts showing the number at which they received the challenged communications is ***actually used*** for "residential" purposes, or face dismissal under Rule 12(b)(6). *See, e.g., Rogers,* 2023 WL 2646468, at *4; *Cunningham v. McDonald,* 2018 WL 6737418, at *2 (M.D. Tenn. Nov. 5, 2018); *Hicks*, 2020 WL 9261758, at *5; *Kemen v. Cincinnati Bell Tel. Co., Inc.*, 2023 WL 361136, at *5 (S.D. Ohio Jan. 23,

2023); *Gillam,* 2023 WL 2163775, at *4. Just parroting the statutory text or case law on this essential DNC claim element will not suffice to meet the *Iqbal*/*Twombly* plausibility threshold or avoid a dismissal on this basis, either. *See, e.g., Morgan v. U.S. Xpress, Inc.,* 2018 WL 3580775, at *2 (W.D. Va. July 25, 2018) (dismissing similar TCPA claim applying only to "residential" lines, noting the plaintiff's characterizations that her number is a "residential" line "are not factual allegations, but legal terms drawn from the operative statute").

Moreover, some courts have recently conducted a thorough analysis of the statutory text and history in accordance with recent Supreme Court rulings on proper statutory construction principles, and in doing so have concluded that cell phone numbers, which are not fixed to a residence, are <u>not</u> "residential" numbers under the plain language of the statute. *See, e.g., Lowrey v. Twilio, Inc.,* 2026 WL 2958730, at *6-7 (W.D. Va., Oct. 1, 2026) (holding that "the statute's 'plain meaning' and its structure show that cellphones are different from residential lines") (citing various authorities).

As applied here, Plaintiff pled zero plausible facts in his Complaint indicating how the three different cell phone numbers that he claims were called in purported violation of the TCPA or state law are actually used; and at best he merely parrots the statute or case law and concludes that one of them is a "residential phone line" that is "for personal use only." *See, e.g.,* Dkt. 1-1, ¶¶ 22-23. It is implausible that <u>all</u> three cell phone numbers are Plaintiff's "residential" line. And as one court in this District aptly held when dismissing a similarly-defective DNC claim on this basis, "[t]hese are facts that are easily within the knowledge of [p]laintiffs and can be pleaded to remove any doubt about … whether those numbers are for residential use" for purposes of pleading a DNC claim. *Rogers*, 2023 WL 2646468, at *4 (finding similar allegations as to alleged "personal" use of a number insufficient). This pleading defect is fatal to Plaintiff's Counts 1, 2, and 3, as well.

### C. Plaintiff Does Not Adequately Allege That He Registered Each of the Subject Cell Phone Numbers on the National DNC Registry (Count 1).

Also as to Plaintiff's National DNC Registry claim in Count 1, the TCPA's implementing regulations expressly only restrict initiating telephone solicitations to a "residential telephone subscriber who has registered ***his or her*** telephone number" on the National Registry at least 30 days

before the alleged calls. 47 C.F.R. § 64.1200(c)(2) (emphasis added). Here, Plaintiff refers to one of the three cell phone numbers at issue as having been registered on the Registry. *See, e.g.,* Dkt. 1-1, ¶ 24. He does not indicate which of the three he registered or plead the other two were registered, let alone by who or when. Again, dismissal on this basis is particularly appropriate given "[t]hese are facts that are easily within the knowledge of Plaintiff[] and can be pleaded to remove any doubt about whether [Plaintiff] actually registered [his] own number[] on the DNC list[.]" *Rogers*, 2023 WL 2646468, at *4. This Court should rule similarly, and dismiss Count 1 on this additional basis.

### D. Plaintiff Does Not Plausibly Allege That 4 Pillar Lacked Internal DNC Procedures Before Initiating the Subject Communications (Counts 2 and 3).

Also fatal to Plaintiff's Counts 2 and 3 is that federal courts have widely recognized that "[t]he 'violation of the [internal DNC] regulations' is … the initiation of the phone call without having implemented the minimum procedures[.]" *Charvat v. GVN Michigan, Inc.,* 561 F.3d 623, 632 (6th Cir. 2009). In other words, the TCPA's internal DNC regulations do not prohibit "actually calling an individual after the individual has requested placement on a do-not-call list ... nor do the regulations specifically proscribe failing to record an individual's request to be placed on a do-not-call list." *Charvat v. DFS Servs. LLC*, 781 F. Supp. 2d 588, 592 (S.D. Ohio 2011) (citing *GVN*).

Instead, the operative question for an internal DNC claim (which must be pled in accordance with federal pleading standards) is whether the caller ***maintained*** such procedures in the first instance prior to making the violative calls—not merely whether additional calls were received after a "stop" request or any other reason proscribed by the regulations (such as not providing a copy of the caller's internal DNC policy). *See Hamilton v. Voxeo Corp.,* 2009 WL 1868542, at *4 (S.D. Ohio June 25, 2009) (granting summary judgment on this basis, applying *inter alia*, *GVN*). *See also Barr v. Macys.com, LLC,* 2023 WL 6393480, at *5 (S.D.N.Y. Sept. 29, 2023) (dismissing under Rule 12(b)(6), holding the "mere fact" a plaintiff receives a call after an alleged opt-out request is not a violation of the internal DNC regulations, without more) (citing *Simmons v. Charter Commc'ns, Inc.,* 222 F. Supp. 3d 121, 140 (D. Conn. 2016), *aff'd*, 686 F.App'x 48 (2d Cir. 2017)); *Hulett v. EYEBUYBIRECT,* 2025 WL 1677071, at *5-7 (N.D.N.Y. June 13, 2025) (ruling similarly).

As applied here, Plaintiff largely regurgitates the statutory text about 4 Pillar's purported lack of procedures without additional factual enhancement; and he rests his internal DNC claim squarely on his vague allegations that he received more calls after supposedly using "reasonable means to send 4 Pillar a do-not-call request"—which again is not a violation of the internal DNC regulations by itself. *See, e.g.,* Dkt. 1-1, ¶¶ 30, 81, 82. These hazy allegations are particularly problematic because a revocation of consent must be "clear" and unambiguous enough to be legally effective. *See, e.g.*, *Dolemba v. Kelly Servs., Inc.,* 2017 WL 429572, at *3 (N.D. Ill. Jan. 31, 2017) (dismissing under Rule 12(b)(6) where plaintiff consented and did not clearly revoke consent); *see also Barnett v. Bank of Am., N.A.,* 2021 WL 2187950, at *5 (W.D.N.C. May 28, 2021) (discussing revocation standards). As one court aptly held while dismissing on this basis, however, Plaintiff must do more than "simply recite[] the requirements of 47 C.F.R. § 64.1200(d) and conclusorily allege[] that they were violated" (as he did) to avoid dismissal. *Bailey v. Domino's Pizza, LLC*, 867 F. Supp. 2d 835, 842 (E.D. La. 2012). *See also Laccinole v. Rocket Mortg., LLC*, 609 F. Supp. 3d 68, 73 (D.R.I. 2022); *Laccinole v. Appriss, Inc.,* 453 F. Supp. 3d 499, 506 (D.R.I. 2020). This further dooms Counts 2 and 3.

**E. Plaintiff's State Law Claims Are Similarly Ill-Pled (Counts 5, 6, 7, and 8).**

As discussed above (*see* pp. 11-12, *supra*), Plaintiff's failure to adequately allege a theory of TCPA liability is also fatal to his state law claims in Counts 5 through 8 of the Complaint. Beyond that, Plaintiff fails to plead sufficient plausible facts supporting other essential elements of those claims, which further warrants their dismissal under Rule 12(b)(6), for at least the following reasons:

For Count 5, Plaintiff invokes RCW 80.36.390(7), which requires a telephone solicitor to do three things when a "stop" request is made during a call: *First*, "inform the called party that his or her contact information will be removed from the telephone solicitor's telephone lists for at least one year." RCW 80.36.390(7)(a). *Second*, "end the call within 10 seconds." RCW 80.36.390(7)(b). *Third*, "not make any additional telephone solicitation of the called party at any telephone number that the called party has requested be removed from the solicitor's telephone lists for a period of at least one year." RCW 80.36.390(7)(c). Here, while he parrots the statutory text, which is insufficient to state any claim under *Iqbal*/*Twombly*, Plaintiff does not identify any specific call on which any of this

occurred. *See* Dkt. 1-1, ¶¶ 104-106. To the contrary, Plaintiff's vague and wholly conclusory allegation that he "used a reasonable means to send 4 Pillar a do-not-call request" at some point and that "[t]hey received Mr. Hoffman's request on March 13, 2026" suggests that this ***did not happen at all*** and thus belies any such inference. *Id.* ¶ 30.

For Count 6, Plaintiff invokes RCW 80.36.390(9), which provides that "[n]o person may initiate, or cause to be initiated, a telephone solicitation to a telephone number registered on the do not call registry maintained by the federal government." As discussed above (*see* pp. 12-15, *supra*), however, Plaintiff fails to plead any plausible facts supporting an inference, *inter alia*, that (i) he received a "telephone solicitation"; (ii) he qualifies as a "residential" subscriber entitled to registerer each of the subject cell phone numbers on the National DNC Registry; or (iii) each of the numbers on which he allegedly received the communications was registered on the Registry (let alone when).

For Counts 7 and 8, Plaintiff invokes Washington's Commercial Electronic Mail Act (RCW 19.190.060, "CEMA") and Consumer Protection Act (RCW 19.86, "CPA") respectively. These claims fail for several reasons. For one, CEMA requires, *inter alia*, that Plaintiff plausibly allege that 4 Pillar "initiate[d] or assist[ed] in the transmission of an electronic commercial text message" to his cell phone. RCW 19.190.060(1). Here, Plaintiff provides no plausible facts about the subject texts from which the Court could reasonably infer that any of them were a "commercial" message, let alone that 4 Pillar actually initiated them or assisted in their transmission (or who really did). *See, e.g., Sundstrom,* 2026 WL 1361646, at *5 (dismissing CEMA/CPA claims on the latter basis).

For another, Plaintiff does not allege any plausible facts supporting all of the "five 'distinct' elements" of any CPA claim, which the Washington Supreme Court recently confirmed are: "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) a causal link between the unfair or deceptive act and the injury." *Montes v. SPARC Grp. LLC*, 6 Wash.3d 321, 330 (2026) (answering certified question from the Ninth Circuit and citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986)). And of course "[i]f one element fails, the CPA claim as a whole fails." *King v. Amazon.com Servs. LLC*, 2026 WL 628261, at *4 (W.D. Wash. Mar. 6, 2026) (citing *Goodyear*

*Tire & Rubber Co. v. Whiteman Tire, Inc.,* 86 Wn. App. 732, 743 (1997)). Here, however, Plaintiff does not allege he suffered an economic injury to his business or property, much less that there was any causal link between the subject texts and his purported injuries (if any), as required for a CPA claim. *See Montes*, 6 Wash. 3d at 330 (holding that "[t]he term 'business or property' [in CPA] means injuries that are economic in nature" and "excludes noneconomic injuries" such as personal injuries, and recognizing that "CPA's purpose is to provide redress for injury to business or property, not to 'give personal injury claimants 'backdoor access' to compensation from a tortfeasor.'") (quoting *Peoples v. United Servs. Auto. Ass'n,* 194 Wn.2d 771, 780 (2019) (quoting *Ambach v. French,* 167 Wn.2d 167, 179 n.6 (2009))). Consequently, Plaintiff's CPA claim in Count 8 fails and should be dismissed for this independent reason.

**IV. Plaintiff's Complaint Is Also Riddled With Legal Defects That Mandate Dismissal.**

Plaintiff's Complaint also suffers from numerous fatal legal defects that require dismissal.

**First**, as to Plaintiff's TCPA Caller ID claim in Count 4, "[t]he ***majority of courts*** have held that § 64.1601(e)" of the regulations "was promulgated under 47 U.S.C. § 227***(d), which does not include a private right of action"*** for consumers. *Dobronski v. Juliasangel Mktg., LLC*, 2025 WL 2659265, at *9-11 (E.D. Mich. Sept. 17, 2025) (emphasis added, dismissing on this basis). *See also Tom v. Delancey Street Group, LLC*, 2026 WL 2255107, at *6 (E.D.N.Y. Aug. 5, 2026) (dismissing on this basis, and holding: "[T]his Court is persuaded by the majority approach, which finds there is no private right of action given § 64.1601(e)(1)'s silence on the matter.") (citing, *inter alia*, *Meyer v. Capital Alliance Group,* 2017 WL 5138316, at *17 (S.D. Cal. Nov. 6, 2017)). While 4 Pillar acknowledges that other courts have ruled differently on this issue, it respectfully submits that the well-reasoned "majority approach" decisions are in alignment with the fundamental principle that courts should be reluctant to find a statutory private right of action in the absence of clear Congressionally-expressed intent to create one. *See, e.g., Alexander v. Sandoval,* 121 S.Ct. 1511, 1520 (2001) ("Without [evidence of Congress's intent to create a private right of action], a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."). Therefore, Count 4 should be dismissed on this basis, as well.

**Second**, "[f]or purposes of establishing damages [for an alleged violation] under 47 U.S.C. § 227(c)"—which is what Plaintiff invokes for his claims in Counts 1 through 4—"violations of multiple [DNC] regulations constitute one violation." *Aussieker v. TSHB, LLC*, 2024 WL 379394, at *5 (E.D. Cal. Feb. 1, 2024), *report and rec. adopted*, 2024 WL 870449 (Feb. 29, 2024) (citations omitted). This means that "[a] plaintiff cannot seek multiple damages where one call violates multiple [DNC] regulations." *Id*. As applied here, Counts 2 and 3, which are redundant of each other,[3] as well as Count 4 assuming *arguendo* there is a private cause of action, are all duplicative of Count 1, as they are based on the same alleged set of communications and "facts," and therefore should be dismissed for this additional reason. *See, e.g., DFS*, 781 F. Supp. 2d at 592 (dismissing duplicative § 227(c) count under Rule 12(b)(6), holding statutory damages under the TCPA are only recoverable on "per-call basis" and that "failing to state separate violations of the TCPA" DNC rules warranted dismissal for "fail[ing] to state claims upon which relief can be granted") (citing *GVN,* 561 F.3d at 631-632).

**Third**, as the Supreme Court aptly held, "[i]t ***goes without saying that the courts can and should preclude double recovery*** by an individual." *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 297 (2002) (emphasis added). *See also Gordon v. Pete's Auto Serv. of Denbigh, Inc.,* 637 F.3d 454, 460 (4th Cir. 2011). Thus, federal courts have found that permitting plaintiffs to recover the same damages under both the TCPA and an equivalent state statute, based on the same core facts, amounts to an impermissible double recovery and warrants dismissal. *See*, *e.g., Masters v. Wells Fargo Bank S. Cent*., 2013 WL 3713492, at *3-4 (W.D. Tex. July 11, 2013) (dismissing state telemarketing claim for this reason); *Thomas v. Elite Legal Prac. PC*, 2026 WL 1048217, at *5 (C.D. Cal. Mar. 23, 2026) (same, citing *Masters*). This further warrants dismissal of Plaintiff's Counts 5, 6, 7 and 8 here.

**Fourth**, myriad courts have conducted a thorough statutory analysis and have correctly held that text messages (which are a fundamentally different form of technology) are not "telephone calls"

---

[3] These Counts assert the same internal DNC rule violation, except that Count 3 refers to an "artificial or prerecorded-voice telephone call" (Dkt. 1-1, ¶ 86), and Plaintiff does not allege receipt of such calls. Regardless, Count 3 should be stricken, as Plaintiff cannot recover multiple times under the internal DNC regulations. *See Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099, 1127 (W.D. Mo. 2020) (striking redundant § 64.1200(d) claim under Fed. R. Civ. P. 12(f)) (citing various authorities).

under the plain language of Section 227(c)(5) of the TCPA. *See, e.g., Lowrey,* 2026 WL 2958730, at *5-6 (dismissing text-based DNC claims on this basis and citing various cases, including *Steidinger v. Blackstone Med. Servs.,* 182 F.4th 532. 536-539 (7th Cir. 2026)). *See also Davis v. CVS Pharm., Inc.*, 797 F. Supp. 3d 1270, 1272-1273 (N.D. Fla. 2025); *Radvansky v. 1-800-FLOWERS.COM, Inc.,* 2026 WL 456919, at *3 (N.D. Ga. Feb. 17, 2026); *Rush v. Selectquote Ins. Serv., Inc.*, 2026 WL 2495598, at *1-4 (W.D. Mo. July 30, 2026); *Card v. R.J. Reynolds Tobacco Holdings, Inc*., 2026 WL 2673068, at *1-3 (M.D.N.C. Sept. 3, 2026); *Stockdale v. Skymount Prop. Grp., LLC*, 2026 WL 591842, at *3 (N.D. Ohio Mar. 3, 2026); *El-Sayed v. Naturopathica Holistic Health, Inc*., 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025); *James v. Smarter Contact, Inc.,* 2026 WL 879244, at *3-5 (M.D. Fla. Mar. 31, 2026); *Irvin v. Sonic Indust. Serv., LLC*, 2026 WL 1098403, at *2–5 (N.D. Ga. Apr. 20, 2026); *Richards v. Fashion Nova, LLC*, 2026 WL 847568, at *2-4 (S.D. Ind. Mar. 26, 2026); *Richards v. Shein Distrib. Corp.*, 2026 WL 847584, at *3 (S.D. Ind. Mar. 26, 2026); *Conrad v. Hart Consumer Products*, 2026 WL 2741623, at *6-13, n.3 (N.D. Ala. Sept. 16, 2026); *Radvansky v. 1st Class Medical,* 2026 WL 2858562, at *2-3 (D. Colo. Sept. 23, 2026) (each ruling similarly and dismissing). Therefore, the Court should rule Plaintiff's TCPA DNC claims in Counts 1 through 4 cannot be based on any of the subject text messages mentioned in the Complaint as a matter of law.[4]

**Lastly**, Count 9, which seeks injunctive relief, is not a standalone claim under the TCPA or Washington state law but a remedy, and therefore it fails for all the same reasons listed above.

## CONCLUSION

For all of these reasons, Plaintiff's entire Complaint should be dismissed under Rule 12(b)(6).

---

[4] While 4 Pillar acknowledges other courts in this Circuit have ruled otherwise, respectfully, those courts erroneously found the Ninth Circuit has ruled differently and definitively on this point. Not so. The Ninth Circuit has only addressed "calls" under § 227(b) of the TCPA (not invoked here), and the Seventh Circuit is "the ***only*** circuit [court] to ***specifically*** address § 227(c)(5)" and whether texts are "telephone calls" to date, finding they are not. *Rush,* 2026 WL 2495598, at *4 (emphasis added).

DATED: October 8, 2026

*The undersigned certifies that this memorandum* ***contains 8,390 words****, excluding captions, tables of contents, tables of authorities, signature blocks, required marginal text (e.g., title information and page numbers), or certificates of service, in compliance with the applicable Local Civil Rules, specifically LCR 7(d)(4) and LCR 7(e)(6).*

*The undersigned further certifies that, per the Court's procedures, counsel for the parties met and conferred on September 29, 2026 via telephone and on October 1 and October 2, 2026 via email prior to filing this motion and were unable to reach an agreement. Therefore, the motion is opposed.*

Respectfully submitted,

By: s/ *A. Paul Heeringa*

John W. McGuinness (*pro hac vice* forthcoming)
A. Paul Heeringa (admitted *pro hac vice*)
**MANATT, PHELPS & PHILLIPS, LLP**
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
JMcGuinness@manatt.com
PHeeringa@manatt.com

Rossi F. Maddalena, WSBA #39351
**MERRICK, HOFSTEDT & LINDSEY, P.S.**
3101 Western Avenue, Suite 200
Seattle, WA 98121
Tel. (206) 682-0610
Email: rmaddalena@mhlseattle.com

***Attorneys for Defendant***

**CERTIFICATE OF SERVICE**

I certify that on, October 8, 2026, a true and correct copy of the foregoing document was electronically filed with the Court's ECF system to be sent via the electronic notification system to all counsel of record in the above-captioned matter.

By: s/ A. Paul Heeringa