`

The Honorable Lauren King

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARK HOFFMAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>4 PILLAR CONSULTING, LLC, d/b/a 4 PILLAR FUNDING,<br><br>Defendant. | CASE NO. 2:26-cv-03102-LK<br><br>**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S PUTATIVE FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**NOTED FOR MOTION CALENDAR: DECEMBER 11, 2026**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Action Filed: July 24, 2026<br>Date Removed: August 31, 2026 |

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

RELEVANT ALLEGATIONS ..... 3

APPLICABLE LEGAL STANDARDS ..... 5

ARGUMENT ..... 6

I. The Entire FAC Should Be Dismissed Under Rule 12(b)(6) Because Plaintiff Fails To Plead Sufficient Facts Supporting Each Essential Element of His Various Claims. ..... 6

A. Plaintiff Does Not Plausibly Allege Receipt of a "Telephone Solicitation" or "Telemarketing" Call as Defined by the TCPA (Counts 1 and 2). ..... 6

B. Plaintiff Does Not Plausibly Allege He Qualifies as a "Residential" Subscriber Within the Meaning of the TCPA (Counts 1 and 2). ..... 9

C. Plaintiff Does Not Plausibly Allege 4 Pillar Lacked Internal DNC Procedures Before Initiating the Subject Communications (Count 2). ..... 10

D. Plaintiff's State Law Claims Are Similarly Ill-Pled (Counts 3, 4, and 5). ..... 12

II. The Entire FAC Should Also Be Dismissed Under Rule 12(b)(6) Because Plaintiff Fails to Plausibly Allege a Theory of Liability against 4 Pillar. ..... 13

III. Plaintiff's FAC Is Also Riddled With Legal Defects That Mandate Dismissal. ..... 19

IV. Dismissal with Prejudice is Appropriate. ..... 20

CONCLUSION ..... 20

# INTRODUCTION

Like its faulty predecessor (*see* Dkt. 1-1), Plaintiff's First Amended Complaint (Dkt. 14, "FAC") is long on conclusions, speculation, and legal citations but short on actual plausible ***facts*** meeting the bedrock *Iqbal*/*Twombly* federal pleading standards; and thus it is equally ripe for a dismissal. And given Plaintiff failed to cure the many fatal pleading defects in his original complaint despite having had the benefit of 4 Pillar's previous dispositive motion (*see* Dkt. 12) raising the same issues below when amending—and given some of those defects are legal in nature and therefore incurable—Plaintiff's entire FAC should be dismissed with prejudice.

In sum, the FAC alleges 4 Pillar Consulting LLC ("4 Pillar") violated certain "Do Not Call" ("DNC") provisions of the Telephone Consumer Protection Act (47 U.S.C. § 227, *et seq*., the "TCPA") and three Washington analog statutes. Plaintiff's claims still rest squarely on ill-described calls and texts he concludes were sent to his two different supposedly "residential" cell phone numbers without consent. But Plaintiff's conclusory allegations remain deficient even after amendment.

Though the TCPA is undoubtedly an important remedial statute designed to protect consumers from unscrupulous telemarketers, this purpose does not give TCPA plaintiffs special pleading deference. This is for good reason, as even the FCC itself has recognized the unfortunate side effect of the TCPA is that it unwittingly spawned a cottage industry of class action litigation, "has strayed far from its original purpose" as a beneficial remedial statute, and has "become the poster child for lawsuit abuse" in this country ever since its enactment. *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 8073 (2015).[1] It is against this backdrop, therefore, that federal judges have widely recognized that they must dutifully fulfill their critical "gatekeeping" role under the Federal Rules to ensure that TCPA claims have sufficient factual support and are legally cognizable before subjecting defendants to the high cost of litigation. Plaintiff's defective FAC should suffer the same fate, and be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6), for several reasons:

[1] Respectfully, this case is indicative of that unfortunate side effect. In fact, Hoffman is a seemingly professional TCPA litigant who has filed dozens of similar complaints in courts throughout the country, according to PACER. *See also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("A court may take judicial notice of 'matters of public record'" under Rule 12(b)(6).).

**__First__**, Plaintiff failed to plead sufficient facts supporting essential elements of his various asserted claims. For instance, for his claims in Counts 1 and 2, Plaintiff invokes the TCPA's implementing DNC regulations: 47 C.F.R. § 64.1200(c)(2) and 47 C.F.R. § 64.1200(d). Count 1 invokes the former, which restricts certain "telephone calls" (specifically "telephone solicitations" or "telemarketing" calls) made to "residential" numbers properly registered on the National DNC Registry. Count 2 invokes the latter, which reflects the TCPA's "internal" DNC procedural rules. Plaintiff's FAC omits sufficient non-conclusory facts supporting a plausible inference that: (i) each of the subject communications qualifies as a "telephone solicitation" or "telemarketing" call as defined by the TCPA's regulations or he qualifies as a "residential telephone subscriber" under the TCPA, which is fatal to Counts 1 and 2; or (ii) 4 Pillar lacked internal DNC procedures prior to the transmission of the alleged communications, which is the only possible legal basis for a violation of the internal regulations, and which further warrants dismissal of Count 2. The state law claims in Count 3 through 5 have similar elements and thus fail for the same and other reasons.

**__Second__**, Plaintiff's FAC still does not sufficiently plead a theory of TCPA liability after amendment, which also warrants its complete dismissal. Plaintiff fails to plausibly allege 4 Pillar itself (not a third party) "physically" placed or sent each of the subject communications directly to his cell numbers (i.e., direct TCPA liability) or that 4 Pillar was in a common law agency relationship with any third party that did (*i.e.,* vicarious TCPA liability). Plaintiff's contradictory "sham" allegations in his FAC on this front are improper and not entitled to any presumption of truth.

**__Third__**, Plaintiff's FAC also suffers from fatal legal defects. Certain courts have recognized TCPA plaintiffs __cannot__ recover: (i) under the same TCPA DNC regulations (meaning Plaintiff can only recover under § 64.1200(c)(2) for Count 1 __or__ § 64.1200(d) for Count 2, not both); or (ii) under the TCPA and state equivalent statutes for the same violations, which would amount to an impermissible double recovery. Thus, Counts 2 through 5 fail and should be dismissed.

**__Fourth__**, the private cause of action afforded for purported violations of the TCPA's DNC regulations is found in 47 U.S.C. § 227(c)(5)—which on its face, applies only to "telephone calls" (*i.e.,* voice calls) and not to all forms of communication to or from a telephone, like written text

messages, as myriad courts have held. Therefore, none of the texts which Plaintiff complains legally support his DNC claims.

**Lastly**, since Plaintiff already had a chance to amend his pleading, did not cure the fatal defects in his original Complaint outlined in 4 Pillar's previous motion to dismiss, and in some ways made those defects worse with his contradictory "sham" allegations, any dismissal should be with prejudice.

## RELEVANT ALLEGATIONS

In his original Complaint, Plaintiff vaguely alleged (or, rather, concluded) that "Defendant 4 Pillar and its unknown agents"—referred to collectively as just "Defendants" throughout—"engaged in telemarketing and telephone solicitation activities in Washington State, including the [*sic*] placing phone calls and sending text messages to the Plaintiff to sell products and services" without his consent. Dkt. 1-1, ¶¶ 14, 15, 17, 25. Plaintiff then repeatedly conflated 4 Pillar with those countless possible "unknown agents," merely regurgitated the statutory text, and concluded the subject communications were "placed" or "initiated" by or came "from" the "Defendants"—all without additional factual enhancement. *See, e.g.,* Dkt 1-1, ¶¶ 14, 15, 17, 25, 30, 33, 34, 37, 40, 41, 43, 49-53, 55-59, 61, 72, 74, 76, 78, 88-90, 92, 97-102, 105-108, 113-114, 116, 120, 121, 127-129, 131, 137-138.[2] After 4 Pillar pointed out in its previous motion to dismiss that Plaintiff failed to properly identify the caller for each of the subject communications (*see* Dkt. 12 at 6-12), he removed references to the "unknown agents" for his FAC, which now refers to a singular "Defendant" and alleges 4 Pillar is "directly liable for the calls and texts at issue because its own employees [who Plaintiff concludes

---

[2] This Court may "look to prior pleadings [in this case] in determining the plausibility of [Plaintiff's] amended complaint" under Rule 12(b)(6). *Peters v. Hollie*, 2019 WL 1556661, at *5, n.3 (E.D. Cal. Apr. 10, 2019) (citing *Rodriguez v. Sony Comput. Entm't Am., LLC,* 801 F.3d 1045, 1054 (9th Cir. 2015) and *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)). And in doing so, the Court "is 'not required to accept as true [contradictory] allegations in an amended complaint' without more facts." *Morales v. City & Cnty. of San Francisco,* 603 F. Supp. 3d 841, 846 (N.D. Cal. 2022) (citation omitted). Additionally, in the Ninth Circuit, courts need not accept as true allegations in an amended pleading (like in Plaintiff's FAC in this case) that directly contradict those averred in previous complaints, and in fact may even ***strike*** the changed allegations as "false and sham." *See, e.g.*, *Azadpour v. Sun Microsystems, Inc.*, 2007 WL 2141079, at *2, n.2 (N.D. Cal. July 23, 2007). *See also Royal Primo Corp. v. Whitewater West Indus., Ltd.*, 2016 WL 1718196, at *3 (N.D. Cal. Apr. 29, 2016) (dismissing first amended complaint because there was "significant tension" between it and the allegations in the original complaint).

are Jashaad Worthen or Trenton Girard] made the calls and sent the text messages to the Plaintiff while using Defendant's telephone lines, email domain, business name, and online application." Dkt. 14, ¶ 66. In the very next paragraph, however, Plaintiff's FAC avers "Defendant is vicariously liable because it authorized Mr. Worthen and Mr. Girard to solicit customers on its behalf and held them out as its representatives." *Id.*, ¶ 67. In other words, Plaintiff is still pleading an "either/or" theory of liability after amendment, albeit perhaps more subtly.

Beyond the foregoing "sham" allegations, which were plainly designed to avoid dismissal in response to 4 Pillar's prior motion to dismiss on the issue of direct and vicarious liability, among other things, Plaintiff still pleads little (if any) relevant plausible facts about the content of the subject communications or on the identity of the callers in his FAC, save for (i) his repeated conclusory "descriptions" in his "table" of "[a] sales call from 4 Pillar" or "[a] sales text from Trenton at 4 Pillar"; (ii) additional conclusory statements that "[e]ach call and text was made to encourage [him] to purchase Defendant's financial products and services" or that "[o]n every call [he] answered, voicemail he received, or text message delivered, the Defendant pitched Defendant's financial products and services"; and (iii) one additional conclusory statement that "Trenton with the Defendant called and left a voicemail pitching 'working capital'." *Id.* ¶¶ 20, 21. Tellingly, however, Plaintiff does not provide any screenshots of these purported texts or of any voicemail transcriptions, which would presumably be easy for him to do and as is commonly done in TCPA cases, such that this Court could reasonably infer he was actually "pitched" to purchase anything from 4 Pillar.

Plaintiff's FAC also includes several more internally inconsistent and contradictory "sham" allegations, which likewise should not be taken as true. For example, it alleges 4 Pillar is based in ***New York,*** and yet the vast majority of the subject communications allegedly originated from ***Washington*** area code numbers. *See id.* ¶¶ 5, 20. It also adds screenshots of two email communications Plaintiff purportedly had with Worthen. *See id.* ¶ 22. Notably, however, the cell number with the New York area code provided in Worthen's signature block in those emails (518-698-6210) does not match any of the phone numbers on Plaintiff's "table" supposedly listing all "the calls and text messages" he claims 4 Pillar "sent or made" to him in this case, including the Washington area code number (206-

774-8415) he claims Worthen used to call multiple times. *Id.* ¶¶ 20, 25. Further, while Plaintiff also claims to have had email correspondence with Girard, his email "signature block listed 518-791-9044 as his cell phone number," and 4 Pillar "used that number to call" one of his cell phones multiple times (*id.* ¶ 28), Plaintiff did not provide screenshots of emails with Girard or provide their content.[3]

Plaintiff also avers that, rather than simply do so on a phone call or in response to a text as normal consumers surely would, he inexplicably sent a "written do-not-call request" to "Defendant" via a "USPS certified mail, return receipt requested, which he claims 4 Pillar received on March 13, 2026. *Id.* ¶¶19, 29. While he provides a screenshot of the return receipt (*id.* ¶ 29), Plaintiff does not provide the content of the letter or a screenshot. The only other "stop" request mentioned in the FAC is where he allegedly responded to a text on March 27, 2026 with "Trenton, stop calling me." *Id.* ¶ 20. But Plaintiff does not plausibly allege he received any telephone calls from 4 Pillar after this outside of the statutory 10-business day window for honoring his request.[4] Rather, his FAC only alleges one additional call on April 13, 2026 originating from a different number (518-302-2156) than any of the other calls or texts that he does not associate with 4 Pillar, Worthen, or Girard with any facts. *Id.*

## APPLICABLE LEGAL STANDARDS

It is axiomatic that "'[d]ismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory.'" *Cal. Crane Sch., Inc. v. Google LLC*, 2025 WL 2541913, at *1 (9th Cir. Sept. 4, 2025) (quoting *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013)). As to the latter, a "bare assertion" and "conclusory allegation[s]" will not suffice to avoid a dismissal. *Bell Atl. Corp. v. Twombly*, 550

---

[3] *See also* https://www.allareacodes.com/206 (Washington) and https://www.allareacodes.com/518 (New York) (each last visited Nov. 11, 2026); *Lee,* 250 F.3d at 689 ("A court may take judicial notice of 'matters of public record' [under Rule 12(b)[6)] without converting a motion to dismiss into a motion for summary judgment."); *Herrera v. CarMax Auto Superstores Calif, LLC*, 2014 WL 3398363, at *2 (C.D. Cal. July 2, 2014) ("It is not uncommon for courts to take judicial notice of factual information found on the World Wide Web."); *Schleifer v. Lexus of Manhattan,* 2019 WL 4640055, at *4 (S.D.N.Y. Sept. 24, 2019) (taking judicial notice of area codes).

[4] *See* 47 C.F.R. § 64.1200(d)(3). Assuming *arguendo* that Plaintiff's certified letter (which he claims 4 Pillar received March 13, 2026) was a legally valid internal DNC request, 4 Pillar would have had until March 27, 2026 to honor it, per the foregoing regulation. Per his table, the only other telephone call after March 27 is on April 13 – a call not tied to 4 Pillar with any plausible facts.

U.S. 544, 556–57 (2007). A "formulaic recitation of the elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, under Rule 12(b)(6), this Court must only accept well-pled "factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party." *Colony Cove Properties, LLC v. City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011). However, the Court need not "'accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences'" under this Rule. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1144 n.4 (9th Cir. 2012) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Further, this Court may properly consider the prior Complaint to determine the plausibility of the allegations in Plaintiff's FAC and may even strike contradictory allegations in the FAC as "false and sham." *See* discussion at p. 3, n.2, *supra*. Additionally, "the Court need not accept [internally] inconsistent allegations in a complaint as true" under Rule 12(b)(6), either. *Sacco v. Mouseflow, Inc.*, 2022 WL 4663361, at *2 (E.D. Cal. Sept. 30, 2022) (citations omitted).

## ARGUMENT

As demonstrated below, Plaintiff's FAC (a classic "sham pleading") remains fatally flawed after amendment, and thus is subject to a complete dismissal with prejudice, for several reasons:

### I. The Entire FAC Should Be Dismissed Under Rule 12(b)(6) Because Plaintiff Fails To Plead Sufficient Facts Supporting Each Essential Element of His Various Claims.

#### A. Plaintiff Does Not Plausibly Allege Receipt of a "Telephone Solicitation" or "Telemarketing" Call as Defined by the TCPA (Counts 1 and 2).

Firstly, the private cause of action Plaintiff invokes for those claims, Section 227(c)(5) of the TCPA, on its face "relates solely to telemarketing and solicitation calls," as opposed to all supposedly "unwanted" telephone calls. *Warnick v. Dish Network LLC,* 301 F.R.D. 551, 558 n. 3 (D. Colo. 2014) ("Informational [or transactional] calls are not included in the [DNC] type of calls."). For his claim in Count 1, therefore, Plaintiff must plead sufficient plausible facts suggesting his receipt of a "telephone solicitation"—a term defined in the TCPA's regulations as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods,

or services." 47 C.F.R. § 64.1200(f)(15). For Count 2, Plaintiff must plausibly allege receipt of a "telemarketing" call, which has a substantially similar definition. *See id.*, § 64.1200(f)(13).

To meet federal pleading standards, "[c]all recipients must do more than" just baldly conclude that "the calls in question were telephone solicitations" or "telemarketing" calls. *Weingrad v. Top Healthcare Options Ins. Agency Co.,* 2024 WL 4228149, at *4 (E.D. Pa. Sept. 17, 2024). Thus, "[w]hile Plaintiff is not required to provide a line-by-line transcript of the telephone calls in question [here], he is still required to provide more than a conclusory statement that Defendant attempted to solicit" him to plead this element. *Bell v. Hawx Servs., LLC,* 2025 WL 2533371, at *4 (E.D. Cal. Sept. 3, 2025). Courts have therefore consistently dismissed DNC claims at the pleadings stage where the plaintiff parrots the statute and relies on conclusory labels like "advertisement" or "solicitation" but omits additional factual support. *See, e.g., Eggleston v. Reward Zone USA LLC,* 2022 WL 886094, at *7 (C.D. Cal. Jan. 28, 2022); *Bell*, 2025 WL 2533371, at *3–4 (citing *Andersen v. Nexa Mortg., LLC*, 2024 WL 3762098, at *2 (C.D. Cal. Aug. 12, 2024), and *Greene v. Select Funding, LLC,* 2021 WL 4926495, at *5 (C.D. Cal. Feb. 5, 2021)); *Gillam v. Reliance First Capital, LLC,* 2023 WL 2163775, at *3-4 (E.D.N.Y. Feb. 22, 2023); *Weingrad*, 2024 WL 4228149, at *4. So should this Court.

Here, Plaintiff pleads no plausible facts about the content of the subject communications, from which this Court could infer they each meet the statutory definitions above, and instead relies exclusively on conclusory statements, such as bare assertions of "sales" calls or texts from 4 Pillar and that each were "made to encourage [Plaintiff] to purchase Defendant's financial products and services." Dkt. 14, ¶¶ 20, 21. *See also*, *e.g.*, *Eggleston*, *Andersen*, and *Bell*, *supra*; *see also Smith v. Getmehealthcare, LLC*, 2025 WL 3771271, at *2 (M.D. Fla. Dec. 31, 2025) (dismissing on this basis where plaintiff failed "to allege facts regarding the caller(s)' identities, the content of the calls, offers presented, or any other facts beyond speculation"); *Gillam,* 2023 WL 2163775, at *3–4 (dismissing where plaintiff "failed to allege sufficient facts regarding the content of the calls from which the [c]ourt could infer that the purpose of the calls was to encourage 'the purchase or rental of, or investment in, property, goods, or services'" and "merely conclude[d], without any factual support, [defendant's] agent 'solicit[ed] refinancing products'"); *Horton v. Molina Healthcare of Texas, Inc.,* 2026 WL

490216, at *9 (N.D. Tex. Feb. 6, 2026) (dismissing DNC claim, where "[t]here [was] no allegation that these calls requested [plaintiff] to purchase anything at all").

The FAC's lack of specific call content allegations is not some minor issue that can be sorted out in discovery, since businesses routinely place non-solicitation calls, including customer-service, informational, administrative, or account-related communications—none of which violate the TCPA's DNC provisions. *See, e.g., Aderhold v. car2go N.A. LLC*, 668 F.App'x 795, 796 (9th Cir. 2016) (message relating to an ongoing transaction was not a telephone solicitation) (citing *In re Rules & Regs. Implementing the TCPA*, 21 FCC Rcd. 3787, 3812 ¶ 49 (Apr. 6, 2006)); *Less v. Quest Diagnostics Inc.,* 515 F. Supp. 3d 715, 717 (N.D. Ohio 2021) ("[M]erely providing information about an available service are not implicated by the [TCPA]."); *Dukes v. DirecTV LLC,* 2016 WL 11956532, at *2 (N.D. Tex. Nov. 7, 2016) (dismissing DNC claim on this basis where the plaintiff was not solicited on the subject call) (collecting cases). That is precisely why the TCPA requires courts to examine the content of the subject calls to determine the "purpose" of the calls at issue. *See Hulce v. Zipongo Inc.*, 132 F.4th 493, 499 (7th Cir. 2025). Without the content, it is just as plausible to infer it was informational.

The authorities cited above underscore that call is not a "telephone solicitation" or "telemarketing" within the meaning of the TCPA merely because it potentially promotes the availability, awareness, or use of a good or service; rather, it must be made for the purpose of ***persuading or urging the call recipient (i.e., the plaintiff) to purchase or pay for goods or services***.

In sum, the TCPA indisputably "is aimed [only] at calls that ***directly*** advertise [or, in the DNC claim context, directly solicit a purchase] and not 'calls that are related in some attenuated way to advertising or telemarketing the caller intends to conduct in the future.'" *Jance v. Homerun Offer LLC*, 2021 WL 3270318, at *4 (D. Ariz. July 30, 2021) (quoting *Knutson v. Blue Light Sec., Inc.,* 2018 WL 1172611, at *4 (S.D. Cal. Mar. 6, 2018)) (emphasis added). Without any of the content of the subject calls here and relying on conclusory labels, Counts 1 and 2 fail on these grounds alone.

### B. Plaintiff Does Not Plausibly Allege He Qualifies as a "Residential" Subscriber Within the Meaning of the TCPA (Counts 1 and 2).

Further, Section 227(c) also does not apply to all phones numbers (like business numbers); instead, it can only be invoked by a "residential telephone subscriber." 47 C.F.R. §§ 64.1200(c)(2) & (d). Certain courts analyzed the statutory text and history have concluded cell numbers are not "residential" numbers under the plain and unambiguous language of the statute. *See, e.g., Lowrey v. Twilio, Inc.,* 2026 WL 2958730, at *6-7 (W.D. Va., Oct. 1, 2026) (citing *Anthony v. Brian Mktg. Grp*., 2026 WL 2685650, at *6 (S.D. Fla. Sept. 11, 2026) and *Cunningham v. Britereal Mgmt., Inc.,* 2020 WL 7391693, at *7 (E.D. Tex. Nov. 20, 2020), *report and rec. adopted,* 2020 WL 7388415 (Dec. 16, 2020)); *Koeller v. OX AppSec Security, Inc.,* 2026 WL 2935851, at *2-4 (E.D. Mo. Sept. 30, 2026).

As the *Lowrey* court observed, "the statute's 'plain meaning' and its structure show that cellphones are different from residential lines" under the TCPA. 2026 WL 2958730, at *6 (citations omitted). Examining the ordinary meaning of these terms when Section 227(c) was enacted in 1991 shows that "[t]he term 'residential' relates to '[a] residence or residences,' and therefore, a residential telephone is uniquely tied to a person's dwelling." *Id*. (quoting Merriam-Webster's at 996). Cell phones, by contrast, are "a portable device that can be used anywhere by connecting to a mobile network" and thus are not tied to a fixed residence. *Id*. Given this "readily apparent distinction" within the statute, Congress "clearly intended to refer to a customer who paid for a residential landline when it used the term 'residential telephone subscriber' in the TCPA" when it enacted Section 227(c). *Id. See also Koeller,* 2026 WL 2935851, at *3 ("Cell phones and home phones were understood at the time to be distinct. Cell phones existed in 1991, yet a 'residential telephone' was understood to be a landline in a home."). Indeed, "leading Senate sponsor of the TCPA captured the zeitgeist in 1991, describing [that] robocalls...'[ ] hound us until we want to ***rip the telephone right out of the wall.***'" *Anthony*, 2026 WL 2685650, at *7 (quoting *Barr v. Am Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 615 (2020)) (emphasis added). And that Congress referenced cellular telephones as distinct being from residential telephones throughout the TCPA further demonstrates Congress acted intentionally in limiting Section 227(c)(5) to only residential lines. *Lowrey*, 2026 WL 2958730, at *7.

Applied here, since a cell phone not fixed to any residence cannot possibly be a residential line—and considering Plaintiff inexplicably alleges he has two such "residential" cell phone lines (which 4 Pillar submits is inherently implausible)—and bases Counts 1 and 2 entirely on alleged cell communications, those claims fail as a matter of law and should be dismissed on this additional basis.

**C. Plaintiff Does Not Plausibly Allege 4 Pillar Lacked Internal DNC Procedures Before Initiating the Subject Communications (Count 2).**

Also fatal to Plaintiff's Count 2 is that federal courts have widely recognized "[t]he 'violation of the [internal DNC] regulations' is … the initiation of the phone call without having implemented the minimum procedures[.]" *Charvat v. GVN Michigan, Inc.,* 561 F.3d 623, 632 (6th Cir. 2009). In other words, the internal DNC regulations do not prohibit "actually calling an individual after the individual has requested placement on a do-not-call list ... nor do the regulations specifically proscribe failing to record an individual's request to be placed on a do-not-call list." *Charvat v. DFS Servs. LLC*, 781 F. Supp. 2d 588, 592 (S.D. Ohio 2011) (citing *GVN*).

Instead, the operative inquiry for an internal DNC claim is whether the caller ***maintained*** such procedures in the first instance prior to making the violative calls—not merely whether additional calls were received after a "stop" request or for any other reason proscribed by the regulations (such as not providing a copy of the caller's internal DNC policy). *See Hamilton v. Voxeo Corp.,* 2009 WL 1868542, at *4 (S.D. Ohio June 25, 2009) (granting summary judgment on this basis, applying *GVN*). *See also Barr v. Macys.com, LLC,* 2023 WL 6393480, at *5 (S.D.N.Y. Sept. 29, 2023) (dismissing under 12(b)(6), holding the "mere fact" a plaintiff receives a call after an alleged opt-out request is not a violation of the internal DNC regulations, without more) (citing *Simmons v. Charter Commc'ns, Inc.,* 222 F. Supp. 3d 121, 140 (D. Conn. 2016), *aff'd*, 686 F.App'x 48 (2d Cir. 2017)); *Hulett v. EYEBUYBIRECT,* 2025 WL 1677071, at *5-7 (N.D.N.Y. June 13, 2025) (ruling similarly). Failure to allege this, in accordance with *Iqbal*/*Twombly*, warrants dismissal of an internal DNC claim under Rule 12(b)(6). *See, e.g.*, *Barr* and *Hulett*, *supra*; *Laccinole* v. *Appriss*, *Inc.*, 453 F. Supp. 3d 499, 506 (D.R.I. 2020); *Bailey v. Domino's Pizza, LLC*, 867 F. Supp. 2d 835, 842 (E.D. La. 2012).

This approach accords with the plain language of the TCPA's internal DNC regulations and with how they work in practice. That is because (i) these regulations do not require "perfect" internal practices and procedures, but rather only require implementing "reasonable" ones (meaning unintentional errors or technical glitches are not a violation); (ii) the regulations simply require businesses to "honor a residential subscriber's [DNC] request" within a "reasonable time" from the date of the request, not to exceed 10 business days; and (iii) "stop" requests need only be honored "within a few days or weeks" and not immediately. *See* 47 U.S.C. § 227(c)(5)(C); 47 C.F.R. § 64.1200(d)(3); *In re Rules & Regs. Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶ 94 (2003).

As applied here, Plaintiff largely regurgitates the statutory text about 4 Pillar's purported lack of procedures without additional requisite factual enhancement. *See, e.g.,* Dkt. 14, ¶¶ 30, 41, 79. He rests his internal DNC claim instead squarely on (i) his supposed certified letter to 4 Pillar, the content of which he does not provide, and (ii) his vague allegations he received at least one additional telephone call at some point outside of the 10-business day safe harbor window—which is not even a violation of the regulations by itself, as noted above. *Id.* ¶¶ 20, 29, 81, 82. Nor can facts about how 4 Pillar handled a request it received on March 13, 2026 support an inference that it lacked procedures when it placed calls months earlier. *See Plenty v. Hilton Resorts Corp.*, 2026 WL 3411213, at *2 (E.D. Wash. Nov. 10, 2026) (dismissing internal DNC claim with prejudice where all calls fell within the ten-business-day period). These hazy and threadbare allegations are particularly problematic because a revocation of consent must be clear and unambiguous enough and be made through reasonable means to be legally effective. *See, e.g.*, *Dolemba v. Kelly Servs., Inc.,* 2017 WL 429572, at *3 (N.D. Ill. Jan. 31, 2017) (dismissing under Rule 12(b)(6) where plaintiff consented and did not adequately allege revocation); *Barnett v. Bank of Am., N.A.,* 2021 WL 2187950, at *5 (W.D.N.C. May 28, 2021) (discussing revocation standards); *Epps v. Earth Fare, Inc.,* 2017 WL 1424637, at *5 (C.D. Cal. Feb. 27, 2017) (dismissing with prejudice on this basis where, as here, "[t]he totality of the plausibly alleged facts, even when viewed in Plaintiff's favor, militate against finding that Plaintiff's revocation method was reasonable). In short, Plaintiff must do more than "simply recite[] the requirements of 47 C.F.R. § 64.1200(d) and conclusorily allege[] that they were violated" (as he did)

to avoid dismissal. *Bailey*, 867 F. Supp. 2d at 842. Since he did not, this defect further dooms Count 2.

**D. Plaintiff's State Law Claims Are Similarly Ill-Pled (Counts 3, 4, and 5).**

As discussed below (*see* p. 19, *supra*), Plaintiff's failure to adequately allege a theory of TCPA liability is by itself to his state law claims in Counts 3 through 5 of the FAC. Plaintiff also fails to plead facts supporting other essential elements of those claims:

For Count 3, Plaintiff invokes RCW 80.36.390(7), which requires a telephone solicitor to do three things when a "stop" request is made during a phone call: *First*, "inform the called party that his or her contact information will be removed from the telephone solicitor's telephone lists for at least one year." RCW 80.36.390(7)(a). *Second*, "end the call within 10 seconds." RCW 80.36.390(7)(b). *Third*, "not make any additional telephone solicitation of the called party at any telephone number that the called party has requested be removed from the solicitor's telephone lists for a period of at least one year." RCW 80.36.390(7)(c). Here, while he parrots the statutory text, which is insufficient to state any claim under *Iqbal*/*Twombly*, Plaintiff does not identify any specific telephone call on which any of this occurred (or did not occur but should have). *See* Dkt. 14, ¶ 20. To the contrary, Plaintiff's vague allegations about his certified letter that he supposedly sent, without more, belie any such inference (in other words, that he did not make a request during any call). *Id.* ¶ 29.

For Count 4, Plaintiff invokes RCW 80.36.390(9), which provides "[n]o person may initiate, or cause to be initiated, a telephone solicitation to a telephone number registered on the do not call registry maintained by the federal government." As discussed above (*see* pp. 6-10 *supra*), however, Plaintiff fails to plead any plausible facts supporting an inference (i) he received a "telephone solicitation" or (ii) he qualifies as a "residential" subscriber entitled to registerer each of the subject cell numbers on the National DNC Registry. In short, because Plaintiff's TCPA claims fail on these elements, so too must his analog state claims. *See Horton,* 2026 WL 490216, at *11 ("Although Horton asserts that 'Defendants' are liable under Texas state law because they violated the TCPA [], the undersigned concludes that Horton has failed to plausibly plead a TCPA claim. Therefore, his state law [] claim likewise fails.") (internal citations omitted).

For Count 5, Plaintiff invokes Washington's Commercial Electronic Mail Act (RCW 19.190.060, "CEMA") and Consumer Protection Act (RCW 19.86, "CPA"). These claims fail for several reasons. For one, CEMA requires Plaintiff plausibly allege 4 Pillar "initiate[d] or assist[ed] in the transmission of an electronic commercial text message" to his cell phone. RCW 19.190.060(1). Here, Plaintiff fails to provide sufficient plausible facts about the subject texts from which the Court could reasonably infer each was a "commercial" message, let alone 4 Pillar actually initiated them or assisted in their transmission (or who really did). *See, e.g., Sundstrom v. Ocean Reef Media LLC,* 2026 WL 1361646, at *3-5 (W.D. Wash. May 15, 2026) (dismissing CEMA/CPA claims on the latter basis).

For another, Plaintiff does not allege plausible facts supporting all of the "five 'distinct' elements" of any CPA claim, which the Washington Supreme Court recently confirmed are: "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) a causal link between the unfair or deceptive act and the injury." *Montes v. SPARC Grp. LLC*, 6 Wash.3d 321, 330 (2026) (answering certified question from the Ninth Circuit, citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986)). Of course, "[i]f one element fails, the CPA claim as a whole fails." *King v. Amazon.com Servs. LLC*, 2026 WL 628261, at *4 (W.D. Wash. Mar. 6, 2026) (citing *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.,* 86 Wn. App. 732, 743 (1997)).

Here, Plaintiff does <u>not</u> allege he suffered an economic injury to his business or property or any causal link between the subject texts and his injuries (if any), as required under CPA. *See Montes*, 6 Wash. 3d at 331 (holding "[t]he term 'business or property' [in CPA] means injuries that are economic in nature" and "excludes noneconomic injuries" such as personal injuries); *id.* at 343 (Stephens, C.J., dissenting (observing "CPA's purpose is to provide redress for injury to business or property, not to 'give personal injury claimants 'backdoor access' to compensation from a tortfeasor.'") (citations omitted).

## II. <u>The Entire FAC Should Also Be Dismissed Under Rule 12(b)(6) Because Plaintiff Fails to Plausibly Allege a Theory of Liability against 4 Pillar.</u>

Another fatal pleading defect is that Plaintiff still fails to plausibly allege a theory of liability

against 4 Pillar, even after amendment. As one court in this Circuit held, the caller's "identity is a ***necessary*** element of ***all***" TCPA claims, no matter the provision invoked. *Gulden v. Consol. World Travel Inc*., 2017 WL 3841491, at *3 (D. Ariz. Feb. 15, 2017) (emphasis added). To properly plead this, there are two potential theories of liability that <u>must</u> be adequately pled in <u>all</u> TCPA cases—direct liability or vicarious liability. This established rule means the defendant "must either (1) directly make the call, or (2) have [a common law] agency relationship with the person who made the call"—and, of course, the plaintiff must plead sufficient facts, not naked conclusions or equivocations, supporting these allegations to comply with federal pleading standards. *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (citation omitted). *See also Sundstrom,* 2026 WL 1361646, at *3-5 (discussing these standards and dismissing TCPA case brought by same counsel representing Plaintiff); *Rogers v. Assurance IQ, LLC,* 2023 WL 2646468, at *4-7 (W.D. Wash. Mar. 27, 2023) (discussing key differences between direct and vicarious liability and the standards for pleading same, and dismissing on these bases where complaint did not include sufficient factual support). Moreover, a plaintiff's failure to plausibly allege either theory warrants dismissal of <u>any</u> TCPA claim in its <u>entirety</u>, regardless of whether the plaintiff has also pled facts supporting other essential elements of that claim. *See Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *9 (D.N.M. Aug. 30, 2023). As shown below, Plaintiff failed to plausibly allege either liability theory.

Indeed, as to the former theory, federal district courts across the country have uniformly recognized that direct TCPA liability applies <u>only</u> to persons or entities that "make" or "initiate" telemarketing calls, which means to literally "***physically place***" each phone call or send each a text message at issue (when texts are actionable) ***directly*** to the plaintiff. *Sheski v. Shopify (USA) Inc.,* 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (dismissing on this basis, citing *In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)) (emphasis added). *See also Brownlee v. Allstate Ins. Co.,* 2021 WL 4306160, at *1 (N.D. Ill. Sept. 22, 2021) (holding plaintiffs must allege facts to "allow the Court to reasonably infer that defendant is [directly] liable for ***each call***" at issue) (emphasis added).

This rule has been firmly adopted by district courts across the Ninth Circuit, including by courts in this District. *See, e.g., Rogers v. Assurance*, *Sheski*, and *Pascal*, *supra* (each dismissing

TCPA claims under Rule 12(b)(6) on this basis and/or others in this Motion); *Frank v. Cannabis & Glass, LLC*, 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019) (same); *Wick v. Twilio Inc.,* 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017) (same); *Meeks v. Buffalo Wild Wings, Inc.,* 2018 WL 1524067, at *3–5 (N.D. Cal. Mar. 28, 2018) (same); *Wilson v. MEDVIDI Inc*., 2025 WL 2856295, at *4 (N.D. Cal. Oct. 7, 2025) (dismissing on this basis, holding: "Despite Plaintiff's conclusory allegation that the text messages were sent by Defendant, the complaint provides no factual details plausibly suggesting that Defendant actually sent them. There is no discussion, for example, of any investigation Plaintiff conducted to form the understanding that Defendant operated the separate phone numbers from which these messages were sent."). Such is also true of federal courts nationally. *See, e.g., Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2-3 (E.D. Va. Apr. 15, 2019) (dismissing and holding: "[A]t the pleadings stage, [a] plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls"–i.e., that the "defendant actually, physically initiated the telephone calls at issue."); *Smith v. Direct Building Supplies, LLC*, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021) (dismissing where the plaintiff "provide[d] no details specifying how [he] knew [the defendant] in fact [physically] placed these calls"); *Cosenza v. Nice North America, LLC*, 2026 WL 2248829, at *3, 5 (C.D. Ill. Aug. 4, 2026) (dismissing on direct and vicarious liability grounds, holding "Plaintiff's either/or theory of liability"—*i.e.*, that "Defendant and/or its agents transmitted unwanted telephone calls to Plaintiff"—"asks the Court to blur the line between" the accepted standards for pleading direct and vicarious TCPA liability theories by "erasing the very distinction between seller and telemarketer" found in the statute); *Bank v. Consumer Tax Advoc., LLC,* 2025 WL 1640500, at *7–8 (E.D.N.Y. Feb. 5, 2025) (recommending dismissal of TCPA complaint on this basis where, like here, there was "no direct allegation [pled] that [the moving defendant] was the entity that actually initiated the call" at issue).

Conversely, direct TCPA liability cannot be based on calls by third parties, and "generally does not include persons or entities … that might merely have some [indirect] role, however minor, in the causal chain that results in the making of a telephone call." *In re Dish Network, LLC*, 28 FCC Rcd. at 6583; *see also Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022)

(dismissing on this basis, holding "a [TCPA] defendant 'generally does not [physically] initiate calls placed by third-party telemarketers,' even if the third party had acted on its behalf"). Similarly, it is settled that "[m]erely offering a good or service for sale does not mean that a retailer [physically] initiates the marketing calls for that product" for direct TCPA liability purposes, either. *Wick,* 2017 WL 2964855, at *3. *See also Rogers v. Interstate Nat'l Dealer Servs. Inc.*, 2020 WL 4582689, at *3 (N.D. Ohio Aug. 10, 2020) (finding calls "on behalf" of a defendant do not support direct liability).

In accordance with *Iqbal*/*Twombly*, however, "[m]erely alleging that [a defendant] 'made' or 'initiated' [a] call" without factual enhancement, as Plaintiff did here, "is ***not*** sufficient to allege a [direct] TCPA [liability] claim" under Rule 12(b)(6). *Frank,* 2019 WL 4855378, at *2 (emphasis added). *See also Rogers*, 2023 WL 2646468, at *5 (dismissing where plaintiff merely parroted the statute and concluded one of the defendants "physically" placed the subject calls without additional facts); *Woodard v. Health Ins. All*., 2024 WL 942629, at *2-3 (N.D. Ill. Mar. 5, 2024) (dismissing on these grounds, holding all "TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal"). In short, "simply asserting a purported fact [as to a caller's identity] does not make it one, where there are no factual allegations to support the asserted conclusion." *Bank v. Alleviate Tax, LLC*, 2024 WL 1332635, at *5 n.6 (E.D.N.Y. Mar. 28, 2024).

Applying the foregoing firmly rooted principles, it is apparent Plaintiff's FAC fails to plausibly allege a direct TCPA liability theory. Indeed, for his original Complaint (which this court may consider for present purposes, as noted above), Plaintiff merely adopted an "either/or theory of liability" that countless courts have rejected as being insufficient, conflated 4 Pillar with countless "unknown agents" and baldly concluded the subject communications were "placed" or "initiated" by or came "from" the "Defendants." *See* discussion at pp. 3-4, *supra*. Though Plaintiff removed overt references to third parties when he amended in response to 4 Pillar's initial motion to dismiss on this point, and now only refers to one "Defendant," his FAC contradicts his prior allegations in several key ways, demonstrating it is merely a classic "sham" pleading.

For example, Plaintiff still claims to have received most of the subject voice calls from callers with Washington area codes (all but the last one in April 2026 which he does not tie to 4 Pillar at all), and that all of the texts are from the same New York area code. *See* Dkt. 14, ¶ 20. At the same time, he now alleges (i) 4 Pillar is located in New York, (ii) Worthen and Girard are 4 Pillar employees (which logically would mean they are in New York), and (iii) Worthen's email signature block (which Plaintiff added to his FAC via a screenshot) reflects a New York mailing address and cell number and Girard's email signature block (which is not screenshotted) reflects New York work and cell numbers. *Id.* ¶¶ 2, 5, 22 27, 66. It stands to reason all communications from these individuals would be exclusively from New York numbers—*i.e.,* the numbers in their email signature blocks. Yet, Worthen's New York cell number in his signature block does not match any of the numbers Plaintiff claims were used by any of the callers or texters, and yet Plaintiff claims Worthen used a Washington area code number to call Plaintiff. *Id.* ¶¶ 20, 22. It makes no sense (and it would be unreasonable to infer) that Worthen would use a Washington number despite not being a Washington resident to call Plaintiff only to turn around and send him an email with a different New York number to call. Logically, Worthen would use the New York number in his signature block to make calls, like Plaintiff alleges Girard did, not two different Washington numbers.

Meanwhile, Plaintiff claims he also corresponded with Girard via email, yet he noticeably does not include a screenshot of his signature block. *Id.* ¶ 27 Given Worthen's signature block does not reflect a phone number allegedly used to call Plaintiff, per the screenshot, it stands to reason Girard's signature block would not either (in other words, the numbers in his block would not match any of the numbers in Plaintiff's chart too). But Plaintiff avers otherwise, omits a screenshot of those emails, and concludes Girard's signature block reflects a cell phone number used to send the subject texts. *Id.* ¶ 27. And at the same time, Plaintiff does not provide the content of any text messages from Girard, such as screenshots of the texts to see if Girard sent them using the cell number in his signature block as Plaintiff alleges. Surely he has copies.

In all, these allegations are simply implausible. Plaintiff went from his original complaint blaming "Defendants" and/or "unknown agents" for sending the subject communications to his FAC,

which (i) associates Worthen with calls from a Washington area code numbers that do not match the number in his email signature block and would not logically have originated from him, (ii) associates Girard with text messages that are not provided, and which originated from numbers in an email signature block for Girard that is not provided, and (iii) does not connect 4 Pillar at all to the last call, which serves as the basis for his internal DNC claim. At bottom, because there is plainly "significant tension" between Plaintiff's FAC and the prior allegations in the original complaint, *Royal Primo*, 2016 WL 1718196, at *2, this Court cannot reasonably infer 4 Pillar is directly liable under the TCPA for each of the subject communications based on this morass of vague, conclusory, contradictory, and internally inconsistent allegations. Such internally inconsistent and directly "[c]ontradictory allegations" like Plaintiff's "are inherently implausible, and [thus] fail to comply with Rule 8, *Twombly*, and *Iqbal*" and cannot survive dismissal under Rule 12(b)(6). *Hernandez v. Select Portfolio, Inc.*, 2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015). Therefore, the Court should simply reject them on their face in accordance with the Ninth Circuit district court precedent above. *See Sacco,* 2022 WL 4663361, at *2; *see also* discussion at p. 3, n.2, *supra* (collecting and citing various cases). And since Plaintiff has not plausibly alleged 4 Pillar physically sent/placed the subject communications (the standard for direct liability), his FAC should be dismissed on this basis.

Further, though Plaintiff now asserts an agency theory as to the two alleged employees only in the alternative in his FAC (Dkt. 14, ¶ 67), his original Complaint relied on an agency theory by purported "agents" entirely. This just further demonstrates that his FAC is a sham pleading that should be rejected on its face. Nevertheless, it is settled that bald conclusions that the subject communications were made by "agents" are insufficient to plausibly allege a vicarious TCPA liability theory. *See, e.g., Sundstrom,* 2026 WL 1361646, at *3-5 (dismissing TCPA complaint by the same counsel representing Plaintiff where it lacked facts supporting a vicarious liability theory). Therefore, the FAC should also be dismissed on vicarious TCPA liability grounds.

Finally, Plaintiff's failure to properly allege any theory of TCPA liability is also fatal to his related state law claims in Counts 3 through 5, which are based on the same ill-pled operative "factual" allegations as to the callers' identities. *See, e.g., Barker v. Sunrun Inc.*, 2019 WL 1983291, at *4

(D.N.M. Apr. 29, 2019) (dismissing entire complaint under Rule 12(b)(6) where plaintiff did not plausibly allege a viable theory of liability under the TCPA, including analog state law claims).

**III. <u>Plaintiff's FAC Is Also Riddled With Legal Defects That Mandate Dismissal.</u>**

Plaintiff's FAC also suffers from numerous fatal legal defects that require dismissal.

**<u>First</u>**, "[f]or purposes of establishing damages [for an alleged violation] under 47 U.S.C. § 227(c)"—the private cause of action Plaintiff invokes for his claims in Counts 1 and 2—"violations of multiple [DNC implementing] regulations constitute one violation." *Aussieker v. TSHB, LLC*, 2024 WL 379394, at *5 (E.D. Cal. Feb. 1, 2024), *report and rec. adopted*, 2024 WL 870449 (Feb. 29, 2024) (citations omitted). This means that "[a] plaintiff cannot seek multiple damages where one call violates multiple [DNC] regulations." *Id*. Here, Count 2 is duplicative of Count 1, as they are based on the same alleged set of communications and "facts," and therefore Count 2 should be dismissed for this additional reason. *See, e.g., DFS*, 781 F. Supp. 2d at 592 (dismissing duplicative § 227(c) count under Rule 12(b)(6), holding statutory damages under the TCPA are only recoverable on "per-call basis" and that "failing to state separate violations of the TCPA" DNC rules warranted dismissal for "fail[ing] to state claims upon which relief can be granted") (citing *GVN,* 561 F.3d at 631-632).

**<u>Second</u>**, as the Supreme Court aptly held, "[i]t ***goes without saying that the courts can and should preclude double recovery*** by an individual." *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 297 (2002) (emphasis added). Thus, federal courts have found that permitting plaintiffs to recover the same damages under both the TCPA and an equivalent state statute, based on the same core facts, amounts to an impermissible double recovery and warrants dismissal. *See*, *e.g., Masters v. Wells Fargo Bank S. Cent*., 2013 WL 3713492, at *3-4 (W.D. Tex. July 11, 2013) (dismissing state telemarketing claim for this reason); *Thomas v. Elite Legal Prac. PC*, 2026 WL 1048217, at *5 (C.D. Cal. Mar. 23, 2026) (same, citing *Masters*). This further warrants dismissal of Plaintiff's Counts 3, 4, and 5 here.

**<u>Third</u>**, myriad courts have conducted a thorough statutory analysis and have correctly held text messages (which are a fundamentally different form of technology) are not "telephone calls" under the plain language of Section 227(c)(5) of the TCPA. *See, e.g., Lowrey,* 2026 WL 2958730, at *5-6 (dismissing text-based DNC claims on this basis and citing various cases, including *Steidinger*

*v. Blackstone Med. Servs.*, 182 F.4th 532. 536-539 (7th Cir. 2026)). *See also Davis v. CVS Pharm., Inc.*, 797 F. Supp. 3d 1270, 1272-1273 (N.D. Fla. 2025); *Radvansky v. 1-800-FLOWERS.COM, Inc.*, 2026 WL 456919, at *3 (N.D. Ga. Feb. 17, 2026); *Rush v. Selectquote Ins. Serv., Inc.*, 2026 WL 2495598, at *1-4 (W.D. Mo. July 30, 2026); *Stockdale v. Skymount Prop. Grp., LLC*, 2026 WL 591842, at *3 (N.D. Ohio Mar. 3, 2026); *James v. Smarter Contact, Inc.*, 2026 WL 879244, at *3-5 (M.D. Fla. Mar. 31, 2026); *Richards v. Fashion Nova, LLC*, 2026 WL 847568, at *2-4 (S.D. Ind. Mar. 26, 2026); *Irvin v. Sonic Indust. Serv., LLC*, 2026 WL 1098403, at *2–5 (N.D. Ga. Apr. 20, 2026); *Card v. R.J. Reynolds Tobacco Holdings, Inc.*, 2026 WL 2673068, at *1-3 (M.D.N.C. Sept. 3, 2026); *Conrad v. Hart Consumer Products*, 2026 WL 2741623, at *6-13, n.3 (N.D. Ala. Sept. 16, 2026); *Radvansky v. 1st Class Medical,* 2026 WL 2858562, at *2-3 (D. Colo. Sept. 23, 2026); *Siringi v. Crust Pizza Co.,* 2026 WL 3392348, at *2 (S.D. Tex. Nov. 6, 2026) (each ruling similarly and dismissing). Therefore, the Court should rule Plaintiff's TCPA DNC claims in Counts 1 and 2 cannot be based on any of the subject text messages mentioned in the FAC as a matter of law.[5]

## IV. <u>Dismissal with Prejudice is Appropriate.</u>

As one district judge in the Ninth Circuit aptly noted in a TCPA case, "Plaintiff already has amended his [original] Complaint once in an attempt to remedy the precise infirmit[ies] at issue [in this Motion], but failed to do so"; thus, any "further amendment would be futile" and dismissal with prejudice is appropriate. *Jovanovic v. SRP Invs. LLC*, 2021 WL 4198163, at *4 (D. Ariz. Sept. 15, 2021) (citing *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir. 2000)). This rings true here. Plaintiff had the chance to amend and did not cure the defects outlined in 4 Pillar's prior motion, and in some ways made them worse with his "sham" allegations. Thus, dismissal with prejudice is appropriate.

## <u>CONCLUSION</u>

Thus, Plaintiff's entire FAC should be dismissed under Rule 12(b)(6) <u>with prejudice</u>.

---

[5] While 4 Pillar acknowledges other courts in this Circuit have ruled otherwise, respectfully, those courts erroneously found the Ninth Circuit has ruled differently and definitively on this point. Not so. The Ninth Circuit has only addressed "calls" under § 227<u>(b)</u> of the TCPA (not invoked here), and the Seventh Circuit is "the ***only*** circuit [court] to ***specifically*** address § 227(c)(5)" and whether texts are "telephone calls" to date, finding they are not. *Rush,* 2026 WL 2495598, at *4 (emphasis added).

DATED: November 12, 2026

*The undersigned certifies that this memorandum* ***contains 8,382 words****, excluding captions, tables of contents, tables of authorities, signature blocks, required marginal text (e.g., title information and page numbers), or certificates of service, in compliance with the applicable Local Civil Rules, specifically LCR 7(d)(4) and LCR 7(e)(6).*

*The undersigned further certifies that, per the Court's procedures, counsel for the parties met and conferred on September 29, 2026 via telephone and on October 1 and October 2, 2026 via email prior for the initial motion and on November 5, 2026 via email prior to filing this motion and were unable to reach an agreement. Therefore, the motion is opposed.*

Respectfully submitted,

By: s/ *A. Paul Heeringa*

John W. McGuinness (*pro hac vice* forthcoming)
A. Paul Heeringa (admitted *pro hac vice*)
**MANATT, PHELPS & PHILLIPS, LLP**
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
JMcGuinness@manatt.com
PHeeringa@manatt.com

Rossi F. Maddalena, WSBA #39351
**MERRICK, HOFSTEDT & LINDSEY, P.S.**
3101 Western Avenue, Suite 200
Seattle, WA 98121
Tel. (206) 682-0610
Email: rmaddalena@mhlseattle.com

***Attorneys for Defendant***

**CERTIFICATE OF SERVICE**

I certify that on, November 12, 2026, a true and correct copy of the foregoing document was electronically filed with the Court's ECF system to be sent via the electronic notification system to all counsel of record in the above-captioned matter.

By: s/ A. Paul Heeringa